IN RE WILLIAM M. BRYANT.

CRIMINAL DOCKET.   No. 14,824.

{ Decided February 16, 1885.
{ Justices MAC ARTHUR, HAGNER and JAMES sitting.

1. A person cannot be secluded *in invita* as an insane person until by due process of law he has been found to be insane. "Due process of law" in this case means the finding of the fact of insanity by a jury of inquiry.

2. There is nothing in the Revised Statutes of the United States regulating the Government Hospital for the Insane which contemplates compulsory seclusion without due process of law. The statute only opens the doors of that institution to those who have been judicially found to be insane.

3. The act of Maryland of 1785, chap. 27, sec. 6, is in force in this District and regulates the control of insane persons.

STATEMENT OF THE CASE.

Wm. M. Bryant sued out a writ of habeas corpus. In his petition he alleged that he was a resident of the District, and was confined in the Government Hospital for the Insane, being there unjustly and unlawfully restrained of his liberty by Dr. Wm. W. Godding, the superintendent of said hospital. Wherefore he prayed the writ of habeas corpus "that the justice of his confinement may be inquired into."

The writ having issued, Dr. Godding, the respondent therein, made return that the petitioner was detained in virtue of a certificate of two physicians and the request of his sister, Mary Bryant, for his admission in accordance with sections 4854 of the Revised Statutes of the United States. That at the time of his admission, in October, 1877, he was suffering from insanity with homicidal proclivities, which had varied in intensity since that period. During his confinement he had had lucid intervals which sometimes continued for a considerable period, during which he was employed at wages in the hospital. That his insanity was liable to recur at any time, being only in abeyance, and depended largely upon the regularity of his life under hospital care.

A traverse of the return was filed by the petitioner in

62

which the detention by virtue of the physician's certificate was admitted, but the legality of the commitment was denied. The traverse further stated that the petitioner was sane.

The physician's certificate and request for admission made by the petitioner's sister, both dated October 18, 1877, were as follows:

We, the undersigned, practicing physicians of the District of Columbia, do certify that we have personally examined into the health and mental condition of Wm. M. Bryant, and that we believe him to be insane at this date, and a fit subject for treatment in the Government Hospital for the Insane.

GRAFTON TYLER, M. D.
WM. G. PALMER, M. D.

*To the Superintendent of the Government Hospital for the Insane:*

The undersigned, who is at this time a resident of Alexandria, Virginia, is desirous of placing in the Government Hospital for the Insane, and hereby request the admission therein, of her brother, William M. Bryant, who has been insane, with lucid intervals, since 1861, and is a native of Lancaster county, Va., and is a brother of the undersigned; and in consideration of his admission to the institution and remaining in it, she hereby agrees to comply with the regulations of the hospital in respect to the payment of board and in all other respects.

MARY BRYANT.

The following is section 4854 of the Revised Statutes, by virtue of which it was claimed the prisoner was admitted and detained in the asylum:

"Sec. 4854. The independent or pay patients may be received into the Hospital for the Insane on the certificate of two respectable physicians of the District, stating that they have personally examined the patient, and believe him to be insane at the time of giving the certificate and a fit sub-

ject for treatment in the institution accompanied by a written request for the admission from the nearest relatives, legal guardians or friend of the patient, where he may remain until restored to reason. The friends of the patient shall comply with the regulations of the hospital in respect to payment of board and in all other respects. The request for admission must be made within five days of the date of the certificate of insanity."

Harris & Oliver for petitioner:

On the hearing at chambers before the Chief Justice, the commitment and detention were declared illegal, and the petitioner was discharged from the custody of the respondent. An appeal was thereupon taken by the Attorney-General.

1. The certificates and request are insufficient to deprive a person of his liberty. The Constitution of the United States provides, that "no person shall be * * * deprived of his life, liberty or property without due process of law." Const. Amendment, Article V. The certificates are not even under oath of the physicians, and never were intended as a "due process of law."

2. The statutes of Maryland in force on February, 1801, remain in force now in this District, unless repealed or modified by Congress or the legislature of the District. Section 92 R. S. D. C. The act of Maryland of 1785, ch. 27, sec. 6, provides for the ascertainment of the mental condition of any person alleged to be insane. It requires a petition to the chancellor, a writ *de lunatico inquirendo*, and the verdict of a jury. Thereupon a committee or trustee is appointed to take the custody of the person or property of the idiot or lunatic, and the chancellor may intrust the person to one committee and the property to another. Alexander's Chancery Practice, 225, 226. We insist that the acts of Congress did not repeal the statute of Maryland, but merely established the hospital, prescribed rules for its government, and for the admission of insane persons into it. It fixed no rules for adjudging a person to be insane, which judgment

and determination must precede the examination (of the physicians) for the admission of persons already ascertained to be insane. The certificates are merely to show that the person is insane at the time the certificates are given; and are intended to follow some previous judgment or determination of the mental condition of the person admitted.

3. Due process of law, as defined by the courts and by the law writers, does not mean, the certificate of two physicians and the request of a sister. It means laws which hear before they condemn, and render judgment only after trial. It cannot be a police regulation, independent of the judiciary and entirely under the control of the legislature. This would enable the legislature to deprive the citizen of his liberty, without the intervention of the judiciary or any other department of the government. 4 Wheat., 519.

Kent, defining it, says: "The larger and better definition of "due process of law," is that it means law in its regular course of administration through courts of justice."

For an exhaustive and full discussion of this point see Cooley's Constitutional Limitations, 351.

4. The court of Maryland (Chancellor Bland) says: "Generally and technically speaking, those only are considered lunatics, who have been so found and returned; without an inquest and return thereon, no one can be judicially treated as a lunatic, and be debarred of his liberty, or have the management of his property taken from him. The power to divest a citizen of his personal freedom, and of his property, is one of most extraordinary and delicate nature; and should, therefore, never be exercised without observing every precaution required by the law." Rebecca Owings' Case, 1 Bland Ch. Rep., 290.

WILLIAM A. MAURY for respondent:

Whatever may have been the meaning of the expression, "due process of law," in the act of March 3, 1885, (Sec. 4844, R. S.) *Subsequent legislation*, now embodied in secs. 4845, 4847, leaves no room for doubt as to what Congress intended to be due process of law as to indigent insane.

. Nor does § 4854 leave any doubt as to what Congress intended to be the procedure by which independent or pay patients were to be thenceforth admitted.

The power of chancery to issue commissions of lunacy is like the power as to infants. It is never exercised save when the lunatic or infant has property. Such a thing as assuming control of the person of a lunatic without property is unkhown, for, in such a case, who would maintain the lunatic or pay his committee.

Mr. Justice JAMES, after briefly stating the case, delivered the opinion of the court.

We do not think that there is anything in the language of the statute which gives any power of compulsory seclusion without due process of law. It opens the doors of this asylum, and nothing more. It simply permits its use for an insane person—a pay patient—and means no more than if the statute had prescribed the rate of boarding for such persons.

One of the terms for admission is that two physicians shall certify to the insanity of the party. But that does not do away with the necessity of a proper judicial ascertainment of the fact of insanity. The provision for the physician's certificate only contemplates the fact that a person may have been found insane by a jury on inquiry, and yet may have become sane again, and, therefore, the certificate is to show that the insanity has not ceased. As a matter of interpretation, the statute is merely permissive. It gives no power to seclude a person in invita who has not been judicially found to be insane.

In our opinion this whole matter is regulated by the Maryland statute of 1785; chap. 27, sec. 6, which contemplates that the person, whose affairs the chancellor is to have control of, shall be found to be insane by a jury of inquiry. There must be a regular adjudication of the question by due process of law, without which even the chancellor cannot act; and due process of law in establishing the insanity of a person has long been declared to be

by inquiry through a jury. It would be impossible, therefore, that we should recognize the unsworn statements of two physicians to be due process of law.

This commitment has no resemblance to the cases of persons in the army or navy or marine corps, or, perhaps, even in the revenue service. There the parties are already under control. A soldier can be made to go into the hospital for medical treatment, upon the judgment of his superior officers, and they can order him to this asylum if they think that he ought to go there, and in that case the officer's action would be due process of law.

But in the case of a civilian, the order of an executive officer, upon the mere unsworn certificate of physicians, cannot be called due process of law.

This deprivation of the liberty of a citizen upon the ground of lunacy is a matter of very grave importance, because it may easily happen that for fraudulent purposes, perhaps with a view to deprive a person owning property of his control over it, a perfectly sane man might be sent to an asylum by his relations, upon a certificate of two physicians, and be illegally confined there for years.

We hold, therefore, first, that these sections of the Revised Statutes do not contemplate compulsory seclusion in this institution without due process of law. They only open its doors to those who have been properly found to be insane persons. If they meant anything else they would be unconstitutional.

And, secondly, we hold that the whole matter of the care of insane persons is regulated by the act of Maryland of 1785, which includes this proceeding of an inquiry by jury.

The judgment below is therefore affirmed.