*In the matter of the Application of* IDA M. WELLMAN
*for a Writ of Habeas Corpus.*
No. 467.

INSANITY — *Notice and Opportunity to be Heard, Essential.* An inquiry and trial in the probate court, had upon an information charging one with being a person of unsound mind and incapable of managing her own affairs, should only be had after notice to the person alleged to be insane, and after opportunity has been given such person to be present at the trial, in person or by counsel. 'An adjudication of insanity that is made without such notice and opportunity to be heard is a nullity, and void, and a commitment thereunder to the insane asylum is illegal.

MEMORANDUM.— Original application by Ida M. Wellman for a writ of *habeas corpus.* Granted. The opinion herein, filed June 12, 1896, states the facts.

*Waters & Waters* and *W. H. Cowles,* for petitioner.
*H. C. Safford,* county attorney, for respondent.

The opinion of the court was delivered by

GARVER, J.: On April 14, 1896, an information in writing was filed in the probate court of Shawnee county, charging Mrs. Ida M. Wellman with being a person of unsound mind, and praying that an inquiry thereinto be made. The probate judge forthwith issued a warrant, directed to the sheriff of said county, ordering him to arrest the said Ida M. Wellman and commit her to the county jail, and that she be brought before the court upon the hearing of said charge at 10 o'clock on the morning of the next day. The sheriff executed the warrant by taking Mrs. Wellman into his custody, about 5 : 30 o'clock P. M., April 14, at her residence in the city of Topeka, where she was detained until after a trial was had, on April 15, in the probate court, a verdict returned adjudging her to be of unsound mind, and an order made committing her to the state insane asylum at Topeka. Since that time she has been detained at the asylum. Said commitment and detention are alleged to be illegal, and she seeks to be released therefrom by means of the writ of *habeas corpus.*

It is contended on behalf of the petitioner that the trial and proceedings had in the probate court are invalid and void, for the reason that she was afforded no opportunity to be present at the trial, either in person or by counsel, or to participate therein. There is no dispute upon the facts. Not only was there an entire absence of any legal notice of the nature and the pendency of the proceedings, but the petitioner

*In re* Wellman, *Petitioner.*

was held in duress at a distance from the place where the hearing was had, and, so far as appears, there was no one present at the trial to say anything in her behalf. This proceeding being of the most delicate character, naturally tending to affect social standing, liberty, and estate, the jurisdiction should be exercised with corresponding care, and with a scrupulous regard for every individual right of the person affected.

The court had the undoubted right, upon the filing of the information, to direct that Mrs. Wellman be brought before the court. But we know of no authority for the issuance of a warrant for the arrest and imprisonment of a person thus proceeded against, where the only showing made respecting his condition is that he "is a lunatic incapable of managing his own affairs, and a fit person to be committed to the insane asylum." When it is made to appear that a person is so far disordered in mind as to endanger his own person, or the person or property of others, he may be confined in some suitable place while proceedings are pending, and until an order for his restraint is regularly made by the probate court. (Gen. Stat. 1889, ¶ ¶ 3719, 3720.) Otherwise, a person charged with lunacy is entitled to his liberty until, by regular trial in the probate court, he has been duly adjudged to be of unsound mind. Then for the first time he may be deprived of his liberty, and placed in the insane asylum, or in the custody of some proper person as guardian. The discretionary power which the statute (Gen. Stat. 1889, ¶ 3679) gives, to cause the person alleged to be of unsound mind to be brought before the court, is doubtless for the purpose of aiding the court, or the jury, in making a just and correct determination of the matters before them. It is

a provision made for the benefit of the court, rather than of the party whose mental condition is the subject of inquiry.   It is not for restraint.

The statute also expressly requires that "the person alleged to be insane shall have the right to be present at the trial, to be assisted by counsel, and to challenge jurors, as in civil cases."   (Gen. Stat. 1889, ¶ 3681.) This right is denied unless an opportunity is afforded to be present to exercise it.   The express granting of the right to appear necessarily implies that notice should be given of the time and place of the hearing, and of the nature of the proceedings to be had.   Even though the statutes made no special provision with reference thereto, we think the same right would exist, with the necessity for notice to the party to be affected by the proceedings.   Independently of statutes, every person is entitled to his day in court, and to the right to be heard before he is condemned.   No mere *ex parte* proceeding can affect either personal or property rights.   Were the legislature to attempt to enact a law authorizing judicial proceedings, the object of which was to affect the person or property of a citizen, without notice or opportunity to be heard, such legislation would be rejected and repudiated in advance as an intolerable outrage upon the rights of the citizen.   It would not only be a serious infringement of natural rights, but would be a flagrant violation of the constitutional guaranty that no person shall be deprived of his liberty or property without due process of law.

Notice and opportunity to be heard lie at the foundation of all judicial procedure.   They are fundamental principles of justice which cannot be ignored. Without them no citizen would be safe from the machinations of secret tribunals, and the most sane

member of the community might be adjudged insane and landed in a madhouse. It will not do to say that it is useless to serve notice upon an insane person; that it would avail nothing because of his inability to take advantage of it. His sanity is the very thing to be tried. At the threshold of the inquiry the court is supposed to have no knowledge of the mental condition, but the presumption of the law is in favor of sanity. Insanity, like crime, does not exist in law until it is established by evidence in a proper proceeding. A trial without notice — a mere *ex parte* proceeding — has no proper place in a court of justice. It is a nullity, and void as affecting those not parties to it. Actual appearance at the trial is, of course, not necessary. There are many cases in which the parties are so mentally disordered that they cannot appear. All we mean to decide is, that the right to appear must be preserved, and opportunity to do so, in person or by counsel, as far as the circumstances will admit.

While this is a case of first impression in this state, the principles involved are not unfamiliar, and the question to be determined has been frequently passed upon by the courts of other states. The decisions are not entirely harmonious, but the argument and weight of authority are, in our opinion, with the views herein expressed. (*Chase v. Hathaway*, 14 Mass. 222; *Eddy v. The People*, 15 Ill. 386; *Shumway v. Shumway*, 2 Vt. 339; *Ex parte Dozier*, 4 Baxt. [Tenn.] 81; *Commonwealth, ex rel., v. Kirkbride*, 2 Brewster [Pa.], 419; *Molton v. Henderson*, 62 Ala. 426; *Morton v. Sims*, 64 Ga. 298; *Martin v. Mortsinger*, 130 Ind. 555; *Evans v. Johnson*, 39 W. Va. 299.)

If the person alleged to be insane voluntarily appears at the trial, or is brought into court by its order,

and is then given an opportunity to resist the charge, and to participate in the proceedings, other notice would probably not be essential.    But, when that is not done, notice should be given, and opportunity afforded to exercise the right to take part in the trial. As the petitioner in this case was deprived, without legal cause, of that right, and given no opportunity for its exercise in the manner contemplated by law, the adjudication against her was null and void.    Her commitment to the asylum was, therefore, illegal.

The petitioner will be discharged.

CLARK, J., concurring; GILKESON, P. J., not sitting.