# LOGUE *v.* FENNING.

INCOMPETENT PERSONS; NOTICE; ESTOPPEL; ELECTION OF REMEDIES; STATUTES; GOVERNMENT HOSPITAL FOR THE INSANE.

1. In a proceeding *de lunatico,* in which the alleged lunatic is charged with a lunacy so violent as to endanger the public peace, a notice of the proceeding, given him on the day of the hearing by the jury, but prior thereto, is sufficient to support a verdict of insanity and an order confirming the verdict, where there is nothing to show that he was prejudiced by the shortness of the notice.

2. Where a party adjudged a lunatic in a proceeding in which a committee of his estate was also appointed secures his release in habeas corpus proceedings, and, instead of assailing the lunacy proceeding as null and void, takes steps in that proceeding attacking the committee's account, he is estopped—having elected a remedy recognizing the validity of the proceeding—from also attacking in the same proceeding the validity of the order adjudging him a lunatic, on the ground of in-sufficient notice, and of the order appointing a committee, for want of any notice.

3. Where one, on notice, has been adjudged insane and committed to an asylum, *quœre,* whether an additional notice is necessary to the ap-pointment of a committee, if not required by statute.

4. The act of Congress of February 20, 1905 (33 Stat. at L. 731, chap. 593, U. S. Comp. Stat. Supp. 1905, p. 660), is a further extension of charity or bounty to pensioners, in pursuance of the benevolent policy shown in all legislation in respect of pensions founded on military service, and ought to be liberally construed.

5. The reduced rates of maintenance for inmates of the Government Hos-pital for the Insane, to be deducted from their pension money, pro-vided for by the act of Congress of February 20, 1905 (33 Stat. at L. 731, chap. 593, U. S. Comp. Stat. Supp. 1905, p. 660), is intended to apply to all pensioners, and not only to insane inmates of the National Home for Disabled Volunteers transferred to that institution.

No. 1734.   Submitted April 2, 1907.   Decided May 7, 1907.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia, passed in a lunacy proceeding, discharging a rule to show cause and denying a petition filed by the alleged lunatic, and from a decree in the same proceeding confirming a report of the auditor, and authorizing the committee to make a final settlement in accordance therewith.

*Reversed.*

The COURT in the opinion stated the facts as follows:

It appears from the record in this case that on March 11, 1898, the District Commissioners filed a petition in the supreme court of the District, alleging that one William J. Logue, a resident of said District, was a lunatic of "homicidal and otherwise dangerous tendencies;" that the cause of lunacy is unknown; that he is unfit to be at large, and, if permitted to remain at liberty, persons and property in said District and the public peace thereof will be endangered; and praying that a writ *de lunatico inquirendo* may be issued. On the same day the justice presiding in said court ordered the writ to issue. On March 16, 1898, the marshal of the District issued a writ notifying the said Logue that a jury had been summoned to determine the issue of his lunacy, and to inquire into his ownership of property, and so forth, and directing him to appear on the same day if he saw proper so to do. This writ was returned on the same day served upon the party. Return was duly made to court by the marshal, reciting a verdict signed by thirteen jurors, showing that they had, on said 16th day of March, 1898, found the said Logue to be a lunatic, and that he had been such since March 8, 1898; that he had no lands or tenements, and neither wife nor children. March 24, 1898, the court passed an order confirming said verdict.

On December 5, 1904, one George S. Wilson, secretary of the board of charities of the District, filed a petition in the equity court, alleging that said Logue was adjudged insane on March 24, 1898, and has been confined in the Government Hospital for the Insane since January 11, 1899; that he has been and is now

supported by the District in said hospital as an indigent person; that no one has contributed or is contributing to his support, the cost thereof falling entirely upon the said District; that said Logue is entitled to a pension from the United States by reason of service in the Army, at the rate of $8 per month, which has not been collected since December 8, 1898, and he has no other property; that for the purpose of collecting this pension and applying the same to the necessary expenses of the lunatic it is necessary that a committee be appointed. The record shows no notice to the said Logue. On the same day, the court passed an order appointing Frederick A. Fenning committee, requiring him to execute a bond in the sum of $1,200 for the faithful performance of his trust, and authorizing him to pay to the Government Hospital for the Insane the sum of $5 per week for the maintenance of said lunatic, until the further order of court.

On November 6, 1906, the first account of the committee was filed, showing receipts amounting to $581.32 from the collection of the arrears of the pension payable to said lunatic. The disbursements were shown to be $106.78, and representations were made as to certain other expenses. This account was referred to the auditor, who made report thereon showing a balance on hand to the credit of the lunatic of $420.54.

December 6, 1905, a petition was filed by said Logue, in which he alleged that he is the person named in said cause as of unsound mind; that as such insane person he was committed to the Hospital for the Insane, as shown by the proceedings in said cause; that the committee, Fenning, filed an account showing certain money in his possession belonging to petitioner, which was referred to the auditor, whose report shows a balance due petitioner of $420.54; that on December 4, 1905, petitioner was discharged from said hospital and declared to be sane, and his status as a person of sound mind had been restored by order of court entered in a habeas corpus proceeding on December 6, 1905; that said Fenning has refused to pay over the balance due petitioner as aforesaid, and has disclosed the intention to hold the same subject to a claim made by the superintendent of said hospital; that petitioner is a pensioner at

the rate of $8 per month, and that three months' dues were payable at the pension agency in the District on December 4, which cannot be collected by petitioner because his pension certificate is in the hands of said superintendent; that petitioner was discharged without any money and with scant clothing, and is in need; that for years he has been improperly held in said insane hospital while possessed of his reason; that the appointment of the committee was irregular, because without petitioner's knowledge or consent, and without his presence in person or by attorney. The prayer is for an order to the committee to surrender the money in his hands, and his pension certificate. An exhibit attached to the petition is a copy of an order made by one of the justices of the supreme court of the District on December 4, 1904, reciting the sworn statement of the superintendent of the hospital that petitioner is of sound mind, and in accordance therewith discharging him from custody, and declaring him restored to his former legal status as a person of sound mind.

Having been served with a rule to show cause, the committee filed an answer to this petition on December 15, 1905. It alleged that he had filed the account before mentioned, and that the auditor had reported thereon; that said account expressly excepted the item of maintenance in the hospital subsequent to December 31, 1904, no payment therefor having been made for the reason that he had no statement from the said superintendent of how much would be retained by him from the pension of the petitioner collected by said superintendent; that he is now in receipt of said statement, showing the said amount and reciting that all pension money drawn by said superintendent will be surrendered upon the payment of his said account. An order is prayed, directing that upon payment of the balance due said hospital, and upon receipt of the pension money from said superintendent, his account be referred to the auditor for final statement. On the same day the court passed an order directing the committee to forthwith pay said Logue the sum of $200 from the fund in his hands; and it was further ordered that the account be referred back to the auditor, together with

all unsettled claims, for a final accounting. The committee's additional report showed that the claim of the superintendent of the hospital amounted to $241.43. The $200 ordered to be paid to said Logue was delivered to him, and his receipt taken therefor. On February 21, 1906, the said Logue filed a motion praying the court to modify the order passed December 5, 1904, authorizing the payment by the committee of $5 per week for the maintenance of said lunatic in the said hospital, on the ground that the order was not in accordance with the act of Congress approved February 20, 1905, prescribing and limiting the charges of the said hospital against the money of pensioners. This motion was overruled March 2, 1906.

The auditor made his report on the final account of March 21, 1906. Taking the former report as a basis, with the balance then declared, and interest, he found the balance to be $422.50. Charging against the same the $200 before ordered paid to Logue, and certain costs, the items of which were not challenged, he reported a balance of $202.79. The question then occurred whether the final account of the hospital be allowed at the rate of $5 per week, as formerly ordered by the court, or at the rate of $6.66 per month under certain regulations of the Secretary of the Interior relating to pensioners confined in the hospital. The auditor, being of the opinion that the order of the court governed, allowed the claim at the rate prescribed therein, amounting to $241.43. The allowance of this charge exhausted the balance aforesaid, and made a debit of $38.64 against the petitioner. There was nothing before the auditor showing the amount of pension money that had been collected by the superintendent of the hospital, and which is to be accounted for by him in final settlement. In this connection it is to be remarked that a last report of the committee on September 20, 1906, shows that by crediting the account of the hospital with pension money in hand, the balance due the same was $157.43, which, if correct, shows a balance in the hands of the committee of $45.34 due to petitioner, and subject to such charges for costs and expenses as may be proper on final settlement.

The said Logue, on April 24, 1906, filed a petition to show

cause, against the committee. This petition is lengthy, and its allegations may be summarized as follows:

At the time of his commitment to the Hospital for the Insane petitioner was suffering from overindulgence in alcoholic drinks, but was sound in mind and body, and was therefore illegally restrained of his liberty until discharged December 4, 1905. While so illegally restrained, the proceedings for the appointment of his committee were had without notice to or appearance by him, and, as he desired his pension money to accumulate until the restoration of his liberty, he would not have consented to said proceeding. The order was passed improvidently, and no guardian *ad litem* was appointed to represent him. That the funds collected by the committee, as shown in his first account, were collected and disbursed at great expense, and said account is incorrect. Special exception is made to so much of the final report of the auditor as recognizes the claims of the hospital for any period after February 20, 1905, at the rate of $5 per week. The prayers of the petitioner were that the order of December 5, 1904, appointing said committee, be adjudged to be null and void; that the committee be ordered to refund and pay over to petitioner such money from said fund as has not been disbursed by him with the authority and consent of petitioner; that all the accounts be referred to the auditor to state a just account; that in the event of the foregoing prayers being refused, that so much of the order of December 5, 1904, as required the payment of $5 per week to the hospital be adjudged to have ceased and determined on February 20, 1905, under the provisions of the act of Congress approved that day, and the regulations thereunder fixing the payment by pensioners to the hospital, etc.

The answer of the committee recited the facts as to the first account and audit, alleged fairness in all charges for disbursement, and prayed that the rule be discharged.

On June 26, 1906, the court passed a decree discharging the said rule and denying the petition. On June 27, 1906, a final decree was passed approving the auditor's final report, and authorizing the committee to make a final settlement in accord-

ance therewith. From these decrees the said Logue has prosecuted this appeal.

*Mr. Richard P. Evans, Mr. Fred H. Benson,* and *Mr. W. W. Poultney* for the appellant.

*Mr. Fred G. Coldren* for the appellee.

Mr. Chief Justice Shepard delivered the opinion of the Court:

1. The first question in this case relates to the validity of the lunacy proceeding terminating March 24, 1898, with the order of the court confirming the verdict of the jury returned with the writ, and declaring the appellant to be a lunatic. The proceeding seems to have been in substantial conformity with the practice obtaining in Maryland when that state ceded the present territory of the District to the United States, and which had, to that time, remained unchanged by act of Congress. The objection urged is that no sufficient notice of the inquiry as to his lunacy was given to the alleged lunatic. Conceding that due process of law requires notice to, and opportunity to be heard by, the party against whom a proceeding to inquire of his lunacy has been instituted, it is sufficient to say that the record shows that notice was served upon the party charged with lunacy of a character so violent as to endanger the public peace. This notice, it is true, was given on the day of the hearing by the jury, but prior thereto. The alleged condition of the lunatic would seem to justify speedy action, and there is nothing in the record to show that he suffered any prejudice by reason of the shortness of the notice given. Such notice is sufficient, in our opinion, to sustain the validity of the verdict and order of confirmation, as against this collateral attack.

There is another and stronger reason why the order confirming the verdict should be regarded as binding upon the appellant. He was committed to the Hospital for the Insane some time after the passage of the order declaring him to be

a lunatic unfit to remain at large, and remained therein until discharged as restored to reason on December 4, 1905. During the intervening time, namely, December 5, 1904, a committee was appointed to take charge of the property of the lunatic, which consisted of a claim for arrears of a pension. It was in the matter of the administration of his property that this proceeding was begun by the appellant by a petition for a rule to his committee to show cause why he should not be required to turn over all money in his hands to the credit of petitioner. In this petition he alleges his commitment to the Hospital for the Insane, and his subsequent discharge, and the restoration of his status as a man of sound mind. Moreover, he thereafter moved the court to amend the order made, on the appointment of the committee, authorizing the payment to the Hospital for the Insane for the maintenance of petitioner at the rate of $5 per week, so as to make said order conform to the subsequent act of Congress approved February 20, 1905. Until the filing of his last petition on April 24, 1906, to compel the committee to show cause,—as the same is entitled,—the entire proceeding is founded on the assumed validity not only of the order declaring his lunacy, but also of the order appointing the committee.

In this last petition, which in the main consists of exceptions to the auditor's statement of the committee's account, he also alleges the commitment to the Hospital for the Insane, but makes no attack upon the regularity of the proceeding. He does allege, however, that when committed to the hospital he was suffering from overindulgence in alcoholic drinks, and shortly thereafter recovered therefrom, and was restored to his former condition of sanity and good physical health; but he alleges no attempt to procure a judicial declaration of his restored sanity until December 4, 1905, at which time the hospital authorities reported his recovery and fitness for discharge from custody. The prayers of this petition are confined to an attack upon the validity of the order appointing the committee, and to the legality and justice of his account of administration.

And it is from the order denying this petition and confirming the auditor's report that the appeal was taken.

The appellant when discharged had his election to assail the entire proceedings in his case as null and void, in some appropriate proceeding for the recovery of his pension money; or to recognize their validity and proceed against the committee by way of attack upon his account of administration. He cannot maintain the two inconsistent positions in one proceeding. Having elected to maintain his complaint upon the assumption of the validity of the proceedings under the lunacy inquiry, he is estopped to maintain a different position,—particularly while still insisting upon a right which necessarily rests upon the other. *Davis* v. *Wakelee,* 156 U. S. 680, 689, 39 L. ed. 578, 584, 15 Sup. Ct. Rep. 555; *Dutcher* v. *Hill,* 29 Mo. 271, 77 Am. Dec. 572.

2. Another contention on behalf of the appellant is that the order appointing his committee is null and void for the want of notice of the application therefor. The record shows that when the application was filed the appellant was in the Hospital for the Insane, under the former order of commitment, and that no notice of the application was given him. There is weighty authority for the proposition that when one has been adjudged to be insane and committed to an asylum no additional notice is necessary to the appointment of a committee, unless, of course, it be required by statute. In other words, when the initial proceeding has been had upon notice, it is not required in the various incidental steps thereafter. *Brigham* v. *Boston & A. R. Co.* 102 Mass. 14, 17; *Heckman* v. *Adams,* 50 Ohio St. 305, 315, 34 N. E. 155; *Swope* v. *Frazer,* 18 Ky. L. Rep. 649, 37 S. W. 495; *Oster* v. *Meyer,* 113 Ky. 181, 186, 67 S. W. 851.

Whether the validity of the order appointing the committee could be maintained upon this ground, we consider it unnecessary to determine. The position that this order is either void or voidable is inconsistent with the ground upon which appellant's case rests; and he is estopped to maintain a different position in this proceeding, for the same reasons given at length

in the discussion of the contention under the first assignment of error.

3. Treating the petition for a rule to show cause—the last filed by the appellant—as embodying exceptions to the auditor's last report and statement of account, the single question is whether it was correct to allow the account of the superintendent of the Hospital for the Insane for the maintenance of appellant at the rate of $5 per week. It will be remembered that the order of .court entered appointing the committee December 5, 1904, authorized the payment by him to the hospital authorities of the sum of $5 per week for maintenance. And this order the court refused to set aside or amend on the motion of the appellant, as hereinabove recited. This order was presumably in accordance with the rates fixed under sec. 4849, Rev. Stat., U. S. Comp. Stat. 1901, p. 3358. However, the exception is confined to the allowance of the hospital account at the same rate from and after the passage of the act of Congress approved February 20, 1905 (33 Stat. at L. 731, chap. 593, U. S. Comp. Stat. Supp. 1905, p. 660). The contention is that under the express provisions of said act and the regulations of the Secretary of the Interior authorized thereby, the amount charged appellant thereafter as a pensioner of the United States could not exceed the rate of $6.66 per month. The act relied on is a substitute for the proviso embodied in the general appropriation act approved August 7, 1882 (22 Stat. at L. 330, chap. 433), in the provision for the Government Hospital for the Insane. The original proviso related only to inmates of the National Home for Disabled Volunteers, who were or might become insane, permitting them to be cared for in the Government Hospital for the Insane; and directing their pensions, if any, to be paid to the proper officer of said hospital, and used for their maintenance and support therein.

The first paragraph of the amending act continues the permission for admissions of such persons to the hospital. It then proceeds as follows:

"During the time that any pensioner shall be an inmate of the Government Hospital for the Insane, all money due or be-

coming due upon his or her pension shall be paid by the pension agent to the superintendent of the hospital, upon a certificate by such superintendent that the pensioner is an inmate of the hospital and is living; and such pension money shall be by said superintendent disbursed and used, under regulations to be prescribed by the Secretary of the Interior, for the benefit of the pensioner, and, in the case of a male pensioner, his wife, minor children, and dependent parents, or, if a female pensioner, her minor children, if any, in the order named, and to pay his or her board and maintenance in the hospital; the remainder of such pension money, if any, to be placed to the credit of the pensioner and to be paid to the pensioner or the guardian of the pensioner in the event of his or her discharge from the hospital; or, in the event of the death of said pensioner while an inmate of said hospital, shall, if a female pensioner, be paid to her minor children, and, in the case of a male pensioner, be paid to his wife, if living; if no wife survives him, then to his minor children; and in case there is no wife nor minor children, then the said unexpended balance to his or her credit shall be applied to the general uses of said hospital: *Provided, further,* That in the case of pensioners transferred to the hospital from the National Home for Disabled Volunteer Soldiers any pension money to his credit at said home at the time of his said transfer shall be transferred with him to said hospital and placed to his credit therein, to be expended as hereinabove provided; and in case of his return from said hospital to the home any balance to his credit at said hospital shall, in like manner, be transferred to said home, to be expended in accordance with the rules established in regard thereto. This provision shall also be applicable to all unexpended pension money heretofore paid to the officers of the said hospital on account of pensioners who were, but are not now, inmates thereof."

The question for determination is whether Congress intended the liberal provisions above quoted to extend to *all pensioners* of the United States in the Hospital for the Insane, or only to those who had been transferred from the said national home. It is to be observed that the designated beneficiaries of the re-

duced rate of maintenance are "all pensioners" and not "all such pensioners." Considering the express purpose of the original proviso that was substituted and broadened by the later act, this phraseology might be regarded as accidental merely, if there were nothing else in the language of the act tending to show that the form of expression indicated an intention to extend the benefits of the act to all insane pensioners, whether inmates of the national home or not. The act is a further extension of charity or bounty, in pursuance of the benevolent policy shown in all legislation in respect of pensions founded on military service, and ought to be liberally construed. Viewed generally, and specially, in this light, the language of the act above quoted appears to us to apply to the case of the appellant and others similarly situated. We do not understand that females are admitted to the National Home for Disabled Volunteer Soldiers, and yet they are expressly named in the act. Their express inclusion, in our opinion, shows that the words "all pensioners" were used with purposed comprehension. The caption being "An Act Relating to the Payment and Disposition of Pension Money Due to Inmates of the Government Hospital for the Insane" is a circumstance tending to support this interpretation.

In view of this conclusion as to the meaning of the act of February 20, 1905, it was error to overrule the exception to so much of the auditor's report as allowed the claim of the Hospital for the Insane against the appellant for maintenance at the rate of $5 per week from and after the passage of said act. The decree of June 27, 1906, approving finding of report of auditor must, therefore, be reversed, with costs, and the cause remanded in order that the account may be referred again to the auditor, with directions to restate the same in respect of this item, charging the appellant with the cost of his maintenance in the hospital from February 20, 1905, to the time of his discharge, at the rate prescribed in the regulations of the Secretary of the Interior, whatever they may be. It is so ordered.                              *Reversed.*