### BARRY v. HALL.
### No. 7049.

United States Court of Appeals for the District of Columbia.

Decided April 11, 1938.

Rehearing Denied May 26, 1938.

224

Thomas Barry, of Washington, D. C., pro se.

Leslie C. Garnett, Allen J. Krouse, Elwood H. Seal, Vernon E. West, and Stanley DeNeale, all of Washington, D. C., for appellee.

Upon request of the court, Lawrence Koenigsberger, of Washington, D. C., filed a brief as amicus curiæ.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from an order of the District Court of the United States for the District of Columbia discharging a writ of habeas corpus and dismissing the petition upon which it was founded. There is no bill of exceptions, and we can therefore consider only whether the order is sustainable on the pleadings. Fleischmann Construction Co. v. United States, 1926, 270 U. S. 349, 356, 46 S.Ct. 284, 287, 70 L.Ed. 624; Eastman Kodak Co. v. Gray, 1934, 292 U. S. 332, 337, 54 S.Ct. 722, 724, 78 L.Ed. 1291; Harvey Co. v. Malley, 1933, 288 U.S. 415, 419, 53 S.Ct. 426, 427, 77 L.Ed. 866. Also there is no assignment of errors. But under paragraph 5 of rule 8 of this court we may notice and pass upon plain error not assigned.

According to the pleadings the appellant, whose home was originally at Memphis, Tennessee, was a seaman in the United States Merchant Marine. As such he came to be a beneficiary of the Federal statutes setting up a United States marine-hospital service, now a part of the United States Public Health Service, for the care and treatment of disabled civilian seamen. He was first in the United States Marine Hospital at Evansville, Indiana. From there he was, on September 1, 1935, transferred to Saint Elizabeths Hospital for the Insane in

the District of Columbia where he has since been confined. This transfer was based upon the following United States Treasury Department letter:

"Treasury Department
"Washington
"August 17, 1935.

"Superintendent,
"St. Elizabeths Hospital,
"Washington, D. C.
"Sir:

"By direction of the Secretary, you are hereby requested to receive into St. Elizabeth's Hospital, the person of Thomas Barry, a merchant seaman, transferred from U. S. Marine Hospital, Evansville, Indiana, to be cared for as prescribed by the Acts of Congress approved March 3, 1875, and July 1, 1918.

"Respectfully,

"(Seal) (Sgd) Josephine Roche
"Assistant Secretary of the Treasury."

No other foundation for the original introduction of the appellant into Saint Elizabeths appears. No other basis for his continued confinement there appears except that on January 26, 1937, and again on July 27, 1937, the appellant appeared in the District Court of the United States for the District of Columbia on writs of habeas corpus, which were discharged, the appellant being remanded to the custody of the appellee, the superintendent of Saint Elizabeths. The appellant is indigent; he is not a member of the United States Army, Navy, Marine Corps or Coast Guard. The only issue of fact under the pleadings is as to his sanity. He alleges that he is not now and never has been insane; the appellee "denies that the petitioner . . . has never at any time been insane" and alleges that he has been and now is of unsound mind and in need of care in a mental hospital.

The statute referred to in the Treasury Department letter reads as follows:

"Insane patients of the Public Health Service shall be admitted into Saint Elizabeths Hospital upon the order of the Secretary of the Treasury, and shall be cared for therein until cured or until removed by the same authority. The Public Health Service shall pay to Saint Elizabeths Hospital the actual per capita cost of maintenance in the said hospital of patients committed by that service." [Act of March 3, 1875, 18 Stat. 486; as amended by Act of July 1, 1902, 32 Stat. 712; Act of August 14, 1912, 37 Stat. 309; Act of July 1, 1916, 39 Stat. 309; and Act of July 1, 1918, 40 Stat. 644; 24 U.S.C. § 193, 24 U.S.C.A. § 193]

The question in the case—is the appellant illegally confined and consequently entitled to be released under the present writ —will be discussed first in terms of his confinement under the Treasury Department letter until, but not including, the time of the order of remand on the writ of habeas corpus of January 26, 1937; and second, in terms of his continued confinement under that order of remand and the further one of July 27, 1937; under the second point will be discussed also the effect of the trial court's factual determination under the present writ that the appellant is now of unsound mind. Thereafter will be discussed a point urged by the appellee to the effect that unless the appellant is held to be presently lawfully confined, he will become a charge upon the District of Columbia, and finally a question concerning the propriety of holding him for a further hearing.

1. The appellant's confinement in Saint Elizabeths under the Treasury Department letter until the time of the order of remand on the writ of habeas corpus of January 26, 1937, was illegal. Insanity is not a crime and therefore the constitutional guaranty of jury trial is not applicable; nevertheless, confinement in a mental hospital is as full and effective a deprivation of personal liberty as is confinement in jail. The Fifth Amendment is applicable in the District of Columbia, Sims v. Rives, 1936, 66 App.D.C. 24, 31, 84 F.2d 871, 878, and cases cited; and it guarantees that no person shall be deprived of liberty without due process of law. Due process of law does not necessarily mean a judicial proceeding —the proceeding may be adapted to the nature of the case—but it does necessitate an opportunity for a hearing and a defense. Ballard v. Hunter, 1907, 204 U.S. 241, 255, 27 S.Ct. 261, 51 L.Ed. 461; Simon v. Craft, 1901, 182 U.S. 427, 437, 21 S.Ct. 836, 45 L.Ed. 1165; In re Bryant, 1885, 3 Mackey 489, 14 D.C. 489; see Logue v. Fenning, 1907, 29 App.D.C. 519, 525; cf. Matter of Lambert, 1901, 134 Cal. 626, 66 P. 851, 55 L.R.A. 856, 86 Am.St.Rep. 296; In re Wellman, 1896, 3 Kan.App. 100, 45 P. 726; State v. Billings, 1894, 55 Minn. 467, 57 N.W. 206, 794, 43 Am.St.Rep. 525; Allgor v. New Jersey State Hospital, 1912, 80 N.J.Eq. 386, 84 A. 711; In re Allen, 1909, 82 Vt. 365, 73 A.

1078, 26 L.R.A.,N.S., 232.[1] In Re Wellman, supra, a person alleged to be insane was committed to and confined in an institution without notice of the nature and pendency of the proceedings and without opportunity to be heard. The Court of Appeals of Kansas, in a habeas corpus proceeding, ordered discharge from the confinement, saying:

"Independently of statutes, every person is entitled to his day in court, and to the right to be heard before he is condemned. No mere *ex parte* proceeding can affect either personal or property rights. Were the legislature to attempt to enact a law authorizing judicial proceedings, the object of which was to affect the person or property of a citizen, without notice or opportunity to be heard, such legislation would be rejected and repudiated in advance as an intolerable outrage upon the rights of the citizen. It would not only be a serious infringement of natural rights, but would be a flagrant violation of the constitutional guaranty that no person shall be deprived of his liberty or property without due process of law.

"Notice and opportunity to be heard lie at the foundation of all judicial procedure. They are fundamental principles of justice which cannot be ignored. Without them no citizen would be safe from the machinations of secret tribunals, and the most sane member of the community might be adjudged insane and landed in a madhouse. It will not do to say that it is useless to serve notice upon an insane person; that it would avail nothing because of his inability to take advantage of it. His sanity is the very thing to be tried. At the threshold of the inquiry the court is supposed to have no knowledge of the mental condition, but the presumption of the law is in favor of sanity. Insanity, like crime, does not exist in law until it is established by evidence in a proper proceeding. A trial without notice—a mere *ex parte* proceeding—has no proper place in a court of justice. It is a nullity, and void as affecting those not parties to it." [3 Kan.App. at pages 103, 104, 45 P. at page 727]

It is not intended by the quotation to cast doubt upon the good faith of the public officers who occasioned the transfer and confinement of the appellant. The question involved is one of principle.

The appellant in the instant case is held under a statute which makes no provision for a hearing and opportunity for defense, and so far as this record shows he had no hearing or opportunity for defense in respect of his transfer to Saint Elizabeths as an insane person. The statute, indeed, is by its plain terms not even intended as a lunacy commitment statute. It assumes insanity already determined and merely authorizes the Public Health Service to transfer insane patients to Saint Elizabeths and requires it to pay Saint Elizabeths the cost of their maintenance; and it authorizes Saint Elizabeths to receive such patients and care for them. Not only do the plain terms of the statute show this but its legislative context does as well. The Act of March 3, 1875, 18 Stat. 485, 486 was "An act to promote economy and efficiency in the marine-hospital service." Sections 1 and 2 required the Secretary of the Treasury to prepare a schedule of the average number of seamen required in safe and ordinary navigation of registered, enrolled and licensed vessels and provided for the assessment and collection from the master or owner of such vessels, of hospital dues calculated upon the average number of seamen as set forth in the schedule. Section 3, 24 U.S.C.A. § 1, defined the term "seaman" wherever employed in legislation relating to the marine-hospital service. Section 4, 24 U.S.C.A. § 7, provided for the leasing of hospital buildings and appropriated the proceeds of such leases to the marine-hospital service.[2] Section 5, 24 U.S.C.A. § 193, provided "That insane patients of said [marine-hospital] service shall be admitted into the Government Hospital for the Insane [now Saint Elizabeths] upon the order of the Secretary of the Treasury, and shall be cared for therein until cured or removed by the same authority; and the charge for each such patient shall not exceed four dollars and fifty cents a week, which charge shall be paid out of the marine-hospital fund." Section 6, 24 U.S.C.A. § 11, provided for the care, at such rates and under such regulations as the Secretary of the Treasury might prescribe, of sick and disabled seamen of foreign vessels not subject to hospital dues. Section 7 provided that the compensation of the Supervising Surgeon of the marine-hospital service should be

---

[1] The state cases are, of course, decided under the Fourteenth Amendment or under like local constitutional provisions.

[2] Apparently the leases contemplated were leases to third parties of such portions of Marine Hospital buildings as were not in necessary use.

paid out of the marine-hospital fund and fixed his salary. It is patent from the foregoing that Section 5 was intended to authorize the marine-hospital service to make use of the existing Government Hospital for the Insane so as to avoid the more expensive course of providing a separate hospital for insane patients, and that it was not at all an attempt to provide a special procedure for determining the sanity of the patients and confining them.[3] Moreover, to construe the statute in question—even if it were susceptible of such a meaning—as a lunacy statute, so that an order of the Secretary of the Treasury thereunder transferring a Public Health Service patient to Saint Elizabeths would operate as an adjudication of insanity and a warrant for confinement, would be to make the statute void for unconstitutionality in denying due process. We are in duty bound to construe a statute so as to sustain it, if that is possible, rather than to declare it void. Interstate Commerce Commission v. Oregon-Washington Railroad & Navigation Co., 1933, 288 U.S. 14, 40, 53 S.Ct. 266, 274, 77 L.Ed. 588.

In support of the statute as a lunacy statute, the appellee relies upon White v. Treibly, 1927, 57 App.D.C. 238, 19 F.2d 712. That case holds that a retired officer of the Navy is still subject to the orders of the Secretary of the Navy and may therefore be committed to Saint Elizabeths under R.S. § 4843, as amended by Act of Jan. 28, 1915, 38 Stat. 801, 24 U.S.C. § 191 .(1934), 24 U.S.C.A. § 191, providing:

"The superintendent, upon the order of the Secretary of War, of the Secretary of the Navy, and of the Secretary of the Treasury, respectively, shall receive, and keep in custody until they are cured, or removed by the same authority which ordered their reception, insane persons of the following descriptions:

"First. Insane persons belonging to the Army, Navy, Marine Corps, and Coast Guard. . . ."

This court in that case did not discuss the question of due process, although that question was raised by the pleadings and discussed in the briefs. In any event, the case is distinguishable from the instant case because the appellant herein is a civilian.

The appellee relies also upon an opinion of April 14, 1919, by Attorney General A. Mitchell Palmer, 31 Op.Atty. Gen. 431. This was written in response to a request by the Secretary of the Interior to be advised whether or not one who had been a member of the United States Army, but who had been discharged therefrom because of insanity, could be admitted to Saint Elizabeths upon order of the Secretary of the Treasury under the War Risk Insurance Act (40 Stat. 405, 406, §§ 300–302), and also from what funds the cost of the treatment of such a patient could be paid, and finally "Can he be legally retained in that hospital until after his mental status has been first adjudicated in the courts of the District of Columbia?" After answering the first question in the affirmative and the second question by saying that the Bureau of War Risk Insurance was under obligation to pay, Attorney General Palmer said in respect of the third question:

"In answer to the third question, the only provision for a judicial inquiry into the mental status of any persons previous to their admission to the hospital is in the case of indigent persons residing in the District of Columbia. Berry does not come within this class, and hence no such judicial inquiry is necessary in his case." [31 Op. Atty. Gen. at page 433]

The conclusion of the Attorney General that the District of Columbia Code provided for judicial inquiry into mental status only in the case of indigent persons residing in the District of Columbia was erroneous. It was based upon a misunderstanding of the District of Columbia statutes then—and now—in effect in reference to the commitment of the indigent insane to Saint Elizabeths. We comment upon these statutes at greater length in another connection. Upon the apparent further conclusion of the Attorney General that no judicial inquiry at all was necessary for the admission into Saint Elizabeths of one who had been a member of the United States Army but who had been discharged therefrom because of

---

[3] Succeeding amendments of the Act relate only to the change of name of the marine-hospital service to the Public Health Service and the change of name of the Government Hospital for the Insane to Saint Elizabeths Hospital and to the basis of payment of the cost of maintenance, i. e., from the fixed sum of four dollars and fifty cents per week to "per capita cost." See Act of July 1, 1902, c. 1370, § 1, 32 Stat. 712; Act of August 14, 1912, c. 288, § 1, 37 Stat. 309; Act of July 1, 1916, c. 209, § 1, 39 Stat. 309; Act of July 1, 1918, c. 113, § 1, 40 Stat. 644.

insanity, we do not rule, no such case being now before us.

The appellee also urges such cases as Hammon v. Hill, D.C., W. D. Pa., 1915, 228 F. 999; County of Black Hawk v. Springer, 1882, 58 Iowa 417, 10 N.W. 791; In re Dowdell, Petitioner, 1897, 169 Mass. 387, 47 N.E. 1033, 61 Am.St.Rep. 290; Ex parte Dagley, 1912, 35 Okl. 180, 128 P. 699, 44 L.R.A.,N.S., 389; In re Petition of Simon G. Crosswell, 1907, 28 R.I. 137, 66 A. 55, 13 Ann.Cas. 874. The statutes involved in these cases were lunacy statutes. They did not require notice and opportunity to be heard in advance of commitment and confinement, but did afford a hearing later at the instance of the subject, in the Dowdell Case by special statutory proceeding, and in the other cases by the writ of habeas corpus. The provisions for ultimate hearing were held to save the statutes. We think the cases are wrongly decided.

 Still further in support of the confinement of the appellant under the Treasury Department letter, the appellant urges upon our attention regulation 508 of the Public Health Service reading as follows:

"508. Any patient believed to be insane and a menace to himself or others may be taken before a competent local authority. If adjudged insane, appropriate recommendation shall be made to the Surgeon General by the medical officer in charge for transfer to a special institution for treatment. Patients who are not dangerous and who acquiesce in the arrangement may be transferred without being adjudged insane; but in all cases the consent of the guardian, if there is one, should be secured before the transfer is made, if practicable. If there is no guardian, relatives or responsible friends should be informed whenever an irresponsible patient is to be committed for transfer, and their acquiescence in the final arrangement secured, if practicable. Due consideration should be given to their desires for the commitment of the patient to an institution of the State of which the patient may be a citizen, the service relinquishing custody and financial responsibility under appropriate circumstances. The laws of the several States governing the admission of insane patients to State institutions must be strictly adhered to."

The appellee takes the position that the court, in the absence of a contrary showing in the present record, must presume that the procedure outlined in the regulation has been complied with, citing Hayes v. United States, 1898, 170 U.S. 637, 18 S.Ct. 735, 42 L.Ed. 1174, and King v. Mullins, 1898, 171 U.S. 404, 18 S.Ct. 925, 43 L.Ed. 214. Neither of these cases is in point. Moreover, the presumption of regularity does not extend to acts involving the forfeiture of an individual's personal rights. See Knox v. Kearney, 1914, 37 Nev. 393, 400, 142 P. 526, 529; cf. Deaver v. Napier, 1918, 139 Minn. 219, 166 N.W. 187.

It is to be commented further in respect of the regulation urged by the appellee that it is inconsistent with the construction which the appellee puts upon the statute in the case; that is to say, the appellee urges that the statute warrants confinement upon the mere order of the Secretary of the Treasury without notice and a hearing, but the regulation assumes the necessity of an antecedent adjudication of insanity before a competent local authority.

 2. The appellant's continued confinement under the orders of remand of January 26, 1937, and July 27, 1937, was also illegal, and the trial court's factual determination under the present writ that the appellant is now of unsound mind does not, without more, warrant his further confinement. The records of the hearings under the writs of habeas corpus of January 26 and July 27, 1937, which resulted in orders of remand, are not before us. We will assume in the appellee's favor, however, that in each hearing the petitions and returns presented for decision both the issue of the validity of the order of transfer to and confinement in Saint Elizabeths and the issue of the sanity of the petitioner at the time of the hearings, and that in each hearing the court determined both issues against the petitioner. Nevertheless, even upon this assumption we cannot follow and give effect to such determinations. For the reasons set out above the legal determination was wrong. And neither the legal nor the factual determination was res judicata. The rule in the Federal courts and in most of the state courts is that the docrine of res judicata does not apply to orders discharging writs of habeas corpus. Salinger v. Loisel, 1924, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989; Wong Doo v. United States, 1924, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999. And not only was the factual determination as well as the legal one not res judicata, but also the factual determination was not the equivalent of the lunacy adjudication contemplated under the statutes of

the District of Columbia, to the benefit of which statutes in respect of the determination of insanity and the necessity of confinement the appellant is entitled, at least in the absence of such an adjudication of insanity in one of the several states as might perhaps be entitled to full faith and credit under the Constitution. So too, the factual determination by the trial court in the instant case of unsoundness of mind is not the equivalent of the lunacy adjudication contemplated under the statutes of the District of Columbia; and it does not therefore, without more, warrant further confinement of the appellant beyond such brief period as is necessary for the institution of proper lunacy proceedings. The right to confine the appellant for such brief period we comment upon below.

 The writ of habeas corpus is a writ the function of which is to accomplish the release of one whose confinement is either without original legal foundation or without continued factual foundation. If an original confinement was invalid the writ is a means of relief against that. If an original confinement was valid but the person confined has regained his sanity, the writ is used to seek discharge from confinement on that factual ground. To treat such a writ of relief as a writ of original adjudication would be to deny to one confined the very type of hearing, the absence of which is the basis of relief when a writ of habeas corpus is directed to the invalidity of the original confinement, and would amount to legal condonation of the initial introduction into a mental hospital and confinement there without the statutory adjudication until the time of the habeas corpus hearing. Even though it appears factually upon a habeas corpus hearing that a petitioner is insane, nevertheless, if he has been confined under a void statute or a void proceeding, he is entitled to an order of discharge so far as his then confinement is concerned. Matter of Lambert, supra; In re Wellman, supra; State v. Billings, supra. Moreover, the lunacy statutes of the District of Columbia make clear that the writ of habeas corpus is not intended to be an agency of original adjudication and commitment as distinguished from one of relief against illegal confinement. Title 16, "Insane Persons," Sections 1 to 38 inclusive, is the pertinent portion of the District of Columbia Code. Section 1 provides for issuance of a writ *de lunatico inquirendo* from the equity court and empowers the trial justice presiding at the inquisition of lunacy to impanel a jury. Section 18 provides for the institution of proceedings by the Commissioners of the District of Columbia in the equity court to determine the mental condition of alleged indigent insane persons. The text of these two sections is set out in the margin.[4] Other provisions relate to the apprehension and temporary detention of allegedly insane persons pending hearing. The title as a whole makes clear that a proceeding in equity is contemplated for the initial determination of insanity and necessity of confinement, and not the writ of habeas corpus. That writ is provided for in the District of Columbia Code in Title 24, Sections 201 to 208, inclusive, and the provisions of that title and especially of Section 208, the text of which we print in the margin,[5] further show that

[4] Section 1. Lunacy proceedings.—All writs de lunatico inquirendo shall issue from the equity court, and a justice holding said court shall preside at all inquisitions of lunacy, and may impanel a jury from among the petit jurors in attendance in the Supreme Court of the District of Columbia [now the District Court of the United States for the District of Columbia]. [Act of June 30, 1902, 32 Stat. 524, as amended by Act of Apr. 19, 1920, 41 Stat. 556]

Section 18. Proceedings to determine mental conditions.—Proceedings to determine the mental condition of alleged indigent insane persons and persons alleged to be insane, with homicidal or otherwise dangerous tendencies shall be instituted upon petition of the Commissioners of the District of Columbia, shall be in the equity court of said District and shall be according to the provisions of section 1 of this title. [Derived from Act of Mar. 3, 1903, 32 Stat. 1043, as amended by Act of Feb. 23, 1905, 33 Stat. 740]

[5] Section 208. Right of parent, guardian, or husband.—Any person entitled to the custody of another person, unlawfully confined or detained by a third person, as a parent, guardian, committee, or husband, entitled to the custody of a minor child, ward, *lunatic*, or wife, upon application to the court or a justice as aforesaid, and showing just cause therefor, under oath, shall be entitled to a writ of habeas corpus, directed to the person confining or detaining as aforesaid, requiring him forthwith to appear and produce before the court or justice the person so detained, and the same proceedings shall be had in relation thereto as hereinabove authorized, and the court or justice, upon hearing the proofs, shall

the writ of habeas corpus in respect of lunacy is one of relief rather than of original adjudication.

3. The appellee urges that, if it is held that the present confinement of the appellant is illegal and that he is therefore entitled to a further determination of his sanity and of the necessity of his confinement, this will cause to be placed upon the District of Columbia the expense of his further support in Saint Elizabeths. If this argument were valid, it should be made to the Congress, not to the court, as an argument of hardship in the application of the District of Columbia lunacy statutes. But the argument is not valid. The appellant will be no less a seaman lawfully to be cared for at the expense of the Public Health Service after he has been lawfully committed to Saint Elizabeths, if lawful commitment shall follow, than he has been while confined without due process of law. Moreover, Sections 16 and 17 of Title 16 of the District of Columbia Code, the text of which we print in the margin,[6] which provide for the admission into Saint Elizabeths of an indigent insane person who did not reside in the District at the time he became insane, contemplate his continuance in Saint Elizabeths at the expense of the District only until he is returned to the place of his original residence or to friends. In contemplation of the law, the Public Health Service is a friend of the appellant seaman.

4. From the foregoing determination that the appellant's original introduction into Saint Elizabeths was, and that his continued confinement therein is, illegal, so that he is entitled to release unless by further proceedings it is legally determined that he is insane and that it is necessary for his own protection or that of others that he be confined, it does not follow that he must be turned inhumanely upon the streets. That he is entitled to a discharge so far as his original introduction and his confinement up to the present time are concerned puts him in no different situation in respect of his present mental condition than if he were at large before proceedings of any kind had been commenced. It is settled that the detention for a brief period of one who is as a matter of fact insane while proper proceedings are being instituted to determine his insanity as a matter of law, is not unlawful. In re Allen, supra; Higgins v. Hoctor, 1933, 332 Mo. 1022, 62 S.W.2d 410; In re Boyett, 1904, 136 N.C. 415, 48 S.E. 789, 67 L.R.A. 972, 103 Am.St.Rep. 944, 1 Ann.Cas. 729.

In accordance with the foregoing the order of the trial court is reversed and the trial court is directed to enter an order discharging the appellant from the custody of the appellee unless within five days after the entry of the order proper lunacy proceedings are instituted.

---

determine which of the contesting parties is entitled to the custody of the person so detained, and commit the custody of said person to the party legally entitled thereto. [Italics supplied] [Act of Mar. 3, 1901, 31 Stat. 1373]

6 Section 16. Admission of nonresidents of District.—Any indigent insane person who did not reside in the District at the time he became insane may be admitted into the hospital at the expense of the District during the continuance of such insane person therein. [R.S. § 4850]

Section 17. Return of nonresident indigent insane.—It shall be the duty of the Commissioners of the District of Columbia, as soon as practicable, to return to their places of residence or to their friends all indigent insane persons not residing in the District at the time they became insane who shall be committed to Saint Elizabeths Hospital to be temporarily cared for, as provided by law, and all necessary expenses incurred by the Commissioners in ascertaining the locality where such persons or their friends belong and in returning them to such locality shall be defrayed by the District of Columbia. [Act of Jan. 31, 1899, 30 Stat. 811, as amended by Act of July 1, 1916, 39 Stat. 309, c. 209, sec. 1]