DORSEY v. GILL, General Superintendent, D. C. Penal Institutions.

No. 8811.

United States Court of Appeals District of Columbia.

Decided Feb. 26, 1945.

Writ of Certiorari Denied June 18, 1945.

See 65 S.Ct. 1580.

Mr. John W. Cragun, of Washington, D. C. (appointed by this Court), for appellant.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., with whom Mr. Edward M. Curran, United States Attorney, of Washington, D. C., was on the brief, for appellee.

Before MILLER, EDGERTON, and ARNOLD, Associate Justices.

MILLER, Associate Justice.

Appellant's petition for a writ of habeas corpus, addressed to the District Court, was accompanied by a pauper's oath. The petition was permitted to be filed without prepayment of costs, but the writ was denied. Petitioner then requested reconsideration of the order or, in the alternative, leave to appeal as a pauper. The trial judge certified[1] that the application was not in good faith and denied the request. Thereafter, petitioner, by a letter addressed to the Chief Justice of this Court, sought leave to proceed in forma pauperis, on appeal. We appointed counsel to prepare, in his behalf, a formal petition to be allowed to proceed in forma pauperis in order that we might give intelligent consideration to the question whether the certificate of the trial judge had been made without warrant.[2] Counsel presented such a petition, together with a comprehensive and exhaustive memorandum in its support. We granted the petition.

On this appeal we are confronted with questions which affect, not only the rights of appellant, but the administration of habeas corpus generally. For centuries the writ has been regarded as a palladium of

[1] Act of July 20, 1892, 27 Stat. 252, as amended 36 Stat. 866 (1910), 42 Stat. 666 (1922), 45 Stat. 54 (1928), 28 U.S.C.A. § 832.

[2] See Wells v. United States, 318 U.S. 257, 63 S.Ct. 582, 87 L.Ed. 746; Waterman v. McMillan, 77 U.S.App.D.C. 310, 135 F.2d 807; Spruill v. Temple Baptist Church, 78 U.S.App.D.C. 324, 141 F.2d 137.

liberty.[3] As early as 1670 it was characterized as "the most usual remedy by which a man is restored again to his liberty, if he have been against the law deprived of it." [4] But even in its origin it was used as a potent weapon for other purposes; for example, in the struggle for supremacy between rival English courts,[5] and in contests between powerful factions in government and politics.[6]

Today, in the District of Columbia, we find a similar contrast. Here, petitions for the writ are used not only as they should be to protect unfortunate persons against miscarriages of justice, but also as a device for harassing court, custodial and enforcement officers with a multiplicity of repetitious, meritless requests for relief. The most extreme example is that of a person who, between July 1939 and April 1944, presented in the District Court 50 petitions for writs of habeas corpus; another person has presented 27 petitions, a third 24, a fourth 22, a fifth 20. One hundred nineteen persons have presented 597 petitions— an average of 5. The extent of the problem is indicated by the table appended in the margin,[7] which shows a growth of filings in the District Court from 32 in the fiscal year 1934 to 276 in 1944; and 101 petitions filed during the first four months of the fiscal year 1945 (July to October, inclusive, 1944). Moreover, it should be noted that the total of 635 petitions filed between July 1941 and October 1944 inclusive, does not include 180 petitions presented, but denied filing.[8] The number has increased most rapidly during the last three years, since the Supreme Court's decision in Walker v. Johnston,[9] and since one of

---

[3] See, generally, In re Rosier, 76 U.S. App.D.C. 214, 220–222, 133 F.2d 316, 322–324, and authorities there cited; Ex parte Yerger, 8 Wall. 85, 95, 75 U.S. 85, 95, 19 L.Ed. 332: "The great writ of habeas corpus has been for centuries esteemed the best and only sufficient defence of personal freedom."; 1 Holdsworth, History of English Law (1938) 227: "This writ has a great place in the history of our constitutional law because it has come to be the most efficient protection ever invented for the liberty of the subject."; see 4 The Lawyer and Banker 361, 377: "The Greatest and Most Important Remedy Known to the Law," and "the Bulwark of Human Liberty."; Bowen v. Johnston, 306 U.S. 19, 26, 59 S.Ct. 442, 446, 83 L.Ed. 455: "The precious safeguard of personal liberty."

[4] Bushell's Case, Vaughan, 136, 124 Eng. Rep. 1006. 1 Holdsworth, History of English Law (1938) 228; cf. 2 Hale, Pleas of the Crown (1778) 143; 9 Holdsworth, History of English Law (1938) 114; Dicey, Law of the Constitution (9th ed. 1939) 220–222.

[5] 1 Holdsworth, History of English Law (1938) 227, 459; 9 Holdsworth, History of English Law (1938) 109–111.

[6] 1 Holdsworth, History of English Law (1938) 227, 516. See Jenks, The Story of Habeas Corpus, 18 L.Q.Rev. 64–65: "In truth there is not a little about the Habeas Corpus which requires explanation. In the first place it seems odd (or it would seem odd in any system of law but our own) that the king's writ, this 'high prerogative writ,' as Blackstone calls it, should have been the great engine for defeating the king's own orders. In the second place, it is somewhat disconcerting to find that this high prerogative document is not an Original writ at all, but a mere interlocutory mandate, or judicial precept, which occurs in the course of other proceedings. Thirdly, and this perhaps is the most embarrassing discovery, the more one studies the ancient writs of Habeas Corpus (for there were many varieties of the article) the more clear grows the conviction, that, whatever may have been its ultimate use, the writ Habeas Corpus was originally intended not to get people out of prison, but to put them in it. These are facts which should surely arouse a just curiosity. Amongst other thoughts which they suggest, they seem to raise this not unimportant historical question—Were the champions of popular liberties, in those stormy days of the early seventeenth century, quite so conservative as they professed to be? When they were loudly asserting that they did but vindicate the existing order, were they in very truth effecting a revolution?"

[7] Memorandum and Statistical Tables on the Filing and Determination of Petitions for Writs of Habeas Corpus in the United States District Court for the District of Columbia. (Prepared by the Administrative Office of the United States Courts, November, 1944.)

| Fiscal Year | No. Filed | Fiscal Year | No. Filed |
|---|---|---|---|
| 1934 | 32 | 1940 | 87 |
| 1935 | 51 | 1941 | 83 |
| 1936 | 63 | 1942 | 125 |
| 1937 | 37 | 1943 | 133 |
| 1938 | 66 | 1944 | 276 |
| 1939 | 57 | 1945 (incomplete) | 101 |

[8] Memorandum of Administrative Office, p. 2, supra note 7.

[9] 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830.

the opinions filed in this Court in the Rosier case,[10] admonished the District Court that: "Administrative inconvenience, even occasional abuse of the facilities of the courts, is but a small price to pay for the precious right of access to the courts guaranteed under our system of government *to all who claim to be wronged.*" [Italics supplied] Thus, if all petitions presented during this period of three and one-third years had been filed and writs issued, as is the practice in some districts, the judges of the District Court would have been required to hold 815 hearings upon returns made, in each instance, by the custodial officers in whose control these persons were held.

Although the problem seems to be more acute in the District of Columbia, the same situation is developing in other districts. Thus, for the fiscal year 1942,[11] five districts, in which federal custodial institutions are located, reported 233 cases.[12] The Supreme Court also is beginning to experience the impact of an increasing volume of appeals in habeas corpus cases.[13]

The situation in the District of Columbia is further complicated by the fact that St. Elizabeths, the great federal mental hospital, is located here. Of the petitions for writs of habeas corpus filed in the District Court of the United States for the District of Columbia, approximately 44 per cent [14] challenge insanity commitments. Moreover, there is already a foreshadowing of trouble in regard to insane persons in other districts. This is shown by the resolution, recently adopted by the Conference of Senior Circuit Judges,[15] the preamble of which reads as follows: "It appearing from a study by the Bureau of Prisons that a

[10] In re Rosier, 76 U.S.App.D.C. 214, 230, 133 F.2d 316, 332. See Memorandum of Administrative Office, p. 1, supra note 7: "The increase in filings since the beginning of the fiscal year 1943 is probably the result of language used by the United States Court of Appeals for the District of Columbia in Ex parte Rosier, 76 U.S. App.D.C. 214, 133 F.2d 316, decided September 2, 1942. Today, any verified written communication seeking a writ of habeas corpus, addressed to the Court, or one of the justices thereof, or to the clerk, is treated in the same manner as a formal petition for a writ."; 31 Geo.L.J. 228, 230. See, generally, Holtzoff, Collateral Review of Convictions in Federal Courts, 25 B.U. L.Rev. 26, 27: "To students of criminal law, the new development represents the introduction of a novel mode of reviewing convictions in criminal cases. The new form of review consists in a marked expansion of the scope of the writ of habeas corpus, which has been effected by decisions of the Supreme Court and other Federal courts."

[11] Report of Statistical Studies of Habeas Corpus Proceedings in Federal Courts for the Fiscal Year 1942, by Will Shafroth of the Administrative Office of the United States Courts. Of the eighty-four districts reporting—excluding the District of Columbia and the Territories--nineteen districts reported no habeas corpus cases disposed of; the other sixty-five reported a total of 586. Of these, 233 cases came from five districts in which federal custodial institutions are situated. In contrast, only 5 cases were disposed of in the whole of the First Circuit; twenty-one districts reported 1 case each; nine districts reported 2 cases each; forty-one districts reported 6 cases, or less, each.

[12] Report of Statistical Studies, supra note 11: Of these 233 cases, only 9 or 3.9% resulted in release. Of the 586 reported by sixty-five districts, only 34 or 5.8% resulted in release. During the same year 86 appeals were taken in habeas corpus cases to the eleven circuit courts of appeals. Only 4 were reversed. In 3 of these 4, the United States was appellant.

[13] Although complete and comparative figures are not available, the following information from the Clerk of the Supreme Court of the United States is a suggestive sample: "The large number of petitions for certiorari, prosecuted in forma pauperis, growing out of habeas corpus proceedings in Illinois which have been filed during the past two years can best be brought into focus by tabulating such cases for the complete October Term, 1943, and for the present term to this day. (January 17, 1945) The cases are entitled against one of three Illinois Wardens, i. e., Ragen, at Joliet; Nierstheimer, at Menard; or Bennett, at Pontiac. October Term, 1943: Petitions filed, 73; Petitions denied, 73. October Term, 1944 to January 17, 1945: Petitions filed, 66; Petitions granted, 2; Petitions denied, 48; Petitions before the Court for consideration, 3; Petitions which have not been listed for conference, 13."

[14] Memorandum of Administrative Office, p. 2, supra note 7:

| St. Elizabeth Officers | 44% |
| District of Columbia custodial officers | 42% |
| Private persons | 8% |
| United States custodial officers | 6% |

[15] Report of the Judicial Conference of Senior Circuit Judges, September Session (1944), p. 18.

considerable number of persons are being sentenced for federal offenses and sent to prison who, because of their insanity, should not have been convicted, and who, indeed, because of their mental incapacity to participate rationally in their defense, should never have been arraigned or brought to trial * * *." It is shown, also, by the sample set out in the margin concerning habeas corpus cases in the Western District of Missouri.[16]

■ These facts suggest the larger background against which the present case must be considered. Here is a problem of judicial administration which cannot be solved in a vacuum. On the one hand, it is necessary that the applicable statute shall be so interpreted as to preserve, in full vigor, this greatest of all safeguards against official oppression. On the other hand, it is necessary to give full meaning to all the language of the statute and thus to protect the writ from abuse.[17] As the

problem has been contributed to, largely, by our disposition of the Rosier case,[18] we have now decided to restate the applicable law upon a broader base than would be necessary, otherwise, for decision of the present case. Preliminarily, we note that In re Rosier constitutes a statement of law by this Court only to the extent that two of the three opinions filed in that case coincide. To the extent that the decision in the Rosier case conflicts with our decision in the present case, it is overruled.

■ So far as concerns the numerous petitions for habeas corpus filed by inmates of St. Elizabeths Hospital, we have outlined, in recent cases,[19] the procedure which should be followed—to the extent that it differs from or supplements procedure generally applicable in habeas corpus cases.[20] Briefly summarized, it is as follows: [1] Habeas corpus is available, not for the purpose of determining a petitioner's mental condition, but, instead, as a

---

[16] Report by Will Shafroth under date of January 15, 1945:

"Re Habeas Corpus Petitions in the Western District of Missouri ·

"Habeas corpus cases from the Medical Center for Federal Prisoners, at Springfield, Missouri, are filed at Kansas City. We do not have information readily available as to the respondent in each case, but since the Springfield institution is the only federal place of detention in the District, it is safe to assume that practically all of the cases are from that institution.

\* \* \* \* \* \*

Habeas Corpus Cases in the Western District of Missouri in which United States was Defendant Fiscal Years 1942, 1943, 1944.

| Number of Cases Terminated | Terminated by Dismissal | Terminated after Hearing | |
|---|---|---|---|
| | | For Petitioner | For Respondent |
| 26 | | 3 | 23 |
| 47 | 2 | 2 | 44 |
| 75 | 5 | 3 | 67" |

[17] See Elder, What Shall Be Done With the Writ of Habeas Corpus? 7 Ill.L.Rev. 1: "Rash, indeed, would be he who, after consideration, would not recognize the necessity even at the present time of that historic remedy, that 'political principle' of the English-speaking people, 'the great and efficacious writ in all manner of illegal confinement * * * habeas corpus ad subjiciendum.' But equally rash would be he who should deny that abuses in its administration have brought it into more or less disrepute among the generality of men. * * *

Interference, and sometimes improper interference with the sentences of other courts, was not unknown to the English practice, but that practice never knew the frequent interference with proceedings and judgments of courts of general common law jurisdiction that have occurred in America. Abuses so serious have indeed at times justified the statement that the 'writ of liberty' bade fair to become the 'writ of anarchy.'" 2 Freeman, Judgments (5th Ed. 1925) p. 1766, § 829.

[18] In re Rosier, 76 U.S.App.D.C. 214, 133 F.2d 316.

[19] Barry v. Hall, 68 App.D.C. 350, 98 F.2d 222; Wrobel v. Overholser, 79 U.S.App.D.C. 293, 145 F.2d 859; Overholser v. Treibly, 79 U.S.App.D.C. 389, 147 F.2d 705; Howard v. Overholser, 76 U.S.App.D.C. 166, 130 F.2d 429; De Marcos v. Overholser, 78 U.S.App.D.C. 131, 137 F.2d 698.

[20] The Supreme Court has said: (Henry v. Henkel, 235 U.S. 219, 228, 35 S. Ct. 54, 56, 59 L.Ed. 203) "there is no unlawful restraint where he is held under a valid order of commitment * * *." If this rule were applied, literally, in the case of a person held, under a commitment to an insane hospital, pursuant to the District of Columbia Code, that person "might remain in confinement indefinitely, though in fact restored to sanity, with no legal means of securing discharge." (Howard v. Overholser, 76 U.S.App.D.C. 166, 171, 130 F.2d 429, 434.)

Content:

method of *initiating* an appropriate procedure for that purpose;[21] [2] if the original commitment was made under a statute which authorizes the detention of insane persons in military service upon order of a military authority,[22] and the judge, to whom the petition is presented, is satisfied that a sufficient showing of present sanity is made, he should order that the petitioner be released *unless,* within a reasonable time specified, the proper military authority orders his recommitment;[23] [3] if the original commitment was of a civilian, and was made without a judicial determination of his mental condition, the judge should order that the petitioner be released *unless,* within a reasonable time specified, a proper proceeding shall have been commenced to secure such a judicial determination;[24] [4] if such a proceeding was originally commenced but was not properly carried out and, if the judge, to whom the petition is presented, is satisfied that, as a consequence, the petitioner was improperly committed, he should order that the proceedings be reopened and a proper determination made of petitioner's present mental condition;[25] [5] if a petitioner was originally committed in a proceeding, properly commenced and carried out, but the judge, to whom the petition for habeas corpus is presented, is satisfied that a sufficient showing of present sanity has been made, he should, in this case, also, order that the proceedings be reopened and a re-examination made to determine the petitioner's present mental condition.[26] In no case of a person held in St. Elizabeths because of insanity should a judge order his release, unconditionally, in a habeas corpus proceeding. It would be as unwise to discharge such a person, without a scientific investigation, as it would be intolerable to compel the continued confinement of a person whose sanity has been restored. How frequently such re-examinations should be required must depend, in each case, upon the petition presented, the type of insanity for which the petitioner was originally committed, the time elapsed since the last inquiry and other considerations upon the record, of which the judge is required to take judicial notice.

From whatever source the petition may come, it is the duty of the judge to whom it is presented, carefully, to consider it.[27] For this purpose, the petition should not be scrutinized with technical nicety;[28] nor the duty discharged as a mere matter of routine.[29] Nevertheless, it is as much the duty of the judge to deny leave to file an insufficient petition, or to deny a writ upon an insufficient petition, already filed, as it is his duty to grant a writ upon a sufficient petition. Having considered the petition, the judge should adopt whichever alternative procedure, available under the applicable statutes, is most appropriate to the case.

There are at least ten such possible alternatives, as follows: [1] When a petition is presented to a judge with a request for leave to file it, the judge may, if the petitioner is not entitled to a writ, deny leave to file it;[30] or [2] he may, in the

Footnotes:

[21] Overholser v. Treibly, 79 U.S.App. D.C. 389, 147 F.2d 705; Howard v. Overholser, 76 U.S.App.D.C. 166, 130 F.2d 429; De Marcos v. Overholser, 78 U.S.App.D.C. 131, 137 F.2d 698.

[22] 24 U.S.C.A. § 191.

[23] Overholser v. Treibly, 79 U.S.App. D.C. 389, 147 F.2d 705.

[24] Barry v. Hall, 68 App.D.C. 350, 98 F.2d 222.

[25] Wrobel v. Overholser, 79 U.S.App. D.C. 293, 145 F.2d 859.

[26] Overholser v. Treibly, 79 U.S.App. D.C. 389, 147 F.2d 705; see De Marcos v. Overholser, 78 U.S.App.D.C. 131, 133, 137 F.2d 698, 700: "The Government argues that the Act creating the Commission does not authorize it to make reports and recommendations in cases where the alleged insane person has been legally committed and later seeks release on the ground of restoration of mental health. But we think this begs the question. * * * No specific provisions in the act require the strict interpretation suggested by the government. It is inconsistent with the background and general purposes of the legislation."

[27] Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461: "A judge of the United States—to whom a petition for habeas corpus is addressed—should be alert to examine 'the facts for himself when if true as alleged they make the trial absolutely void.'"

[28] Holiday v. Johnston, 313 U.S. 342, 350, 61 S.Ct. 1015, 85 L.Ed. 1392; Pyle v. Kansas, 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214.

[29] Patton v. United States, 281 U.S. 276, 312, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263.

[30] 28 U.S.C.A. §§ 832, 835; Ex parte Quirin, D.C., 47 F.Supp. 431, 317 U.S.

interest of justice—if the petition is insufficient in substance—require petitioner to amend it;[31] or he may require him to show —if the judge is not otherwise informed— whether petitioner has made a prior application and, if so, what action was had on it;[32] [3] he may issue a rule to show cause why leave to file a petition for writ of habeas corpus should not be granted and upon the return, may grant or deny leave to file;[33] [4] after a petition has been filed, if it satisfies the requirements of the statute, the judge should issue the writ forthwith;[34] [5] if, upon consideration of a petition which has been filed, it appears that the petitioner is not entitled to the writ, the court should refuse to issue it;[35] [6] if the allegations of the petition are inconclusive, the judge may issue a rule to show cause why a writ should not be granted, to which the relator may respond;[36] [7] if the procedure suggested in [6] is followed, the facts on which the opposing parties rely having been exhibited to the judge, he may find that no issue of fact or law is involved and may then refuse to grant the writ,[37] in which event it is not necessary to hold a hearing;[38] [8] on the other hand, if the procedure suggested in [6] is followed, the judge may find that the facts admitted—in response to the order to show cause—entitle the petitioner to the writ and to a discharge, forthwith, as a matter of law;[39] or [9] he may find that an issue is involved; in which event he should grant the writ and require a hearing,[40] the petition and traverse being then treated as, together, constituting the application for the writ, the return to the rule as setting up the facts thought to warrant its denial, and the issues of fact, thus emerging, should be tried as required by that statute;[41] [10] if, as a matter of convenience, the judge— without determining whether the petition is sufficient—issues the writ, he may then, upon the return, hear and dispose of the whole matter at once.[42]

 In determining which of the several alternatives to adopt, the judge must,

---

1, 5, 24, 63 S.Ct. 1, 2, 87 L.Ed. 3; Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034.

31 Holiday v. Johnston, 313 U.S. 342, 350, 61 S.Ct. 1015, 85 L.Ed. 1392.

32 Salinger v. Loisel, 265 U.S. 224, 232, 44 S.Ct. 519, 68 L.Ed. 989.

33 Ex parte Hull, 312 U.S. 546, 548, 61 S.Ct. 640, 85 L.Ed. 1034.

34 D.C.Code (1940) § 16—801; 28 U. S.C.A. § 455; Ex parte Royall, 117 U. S. 241, 250, 6 S.Ct. 734, 29 L.Ed. 868.

35 Walker v. Johnston, 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830; United States v. Ju Toy, 198 U.S. 253, 261, 25 S.Ct. 644, 49 L.Ed. 1040; United States v. Sing Tuck, 194 U.S. 161, 170, 24 S. Ct. 621, 48 L.Ed. 917; McCord v. Page, 5 Cir., 124 F.2d 68; Taylor v. O'Grady, 8 Cir., 113 F.2d 798; Brown v. Johnston, 9 Cir., 91 F.2d 370, certiorari denied, 302 U.S. 728, 58 S.Ct. 58, 82 L.Ed. 563.

36 Walker v. Johnston, 312 U.S. 275, 279, 61 S.Ct. 574, 85 L.Ed. 830; Mooney v. Holohan, 294 U.S. 103, 111, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; Ex parte Yarbrough, 110 U.S. 651, 653, 4 S.Ct. 152, 28 L.Ed. 274.

37 Walker v. Johnston, 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830; Cohen v. Biddle, 8 Cir., 12 F.2d 704; Thompson v. King, 8 Cir., 107 F.2d 307–308.

38 Mothershead v. King, 8 Cir., 112 F. 2d 1004, 1006; Rookard v. Huff, 79 U.S.App.D.C. 291, 145 F.2d 708; cf. Holiday v. Johnston, 313 U.S. 342, 350, 353– 354, 61 S.Ct. 1015, 1017, 85 L.Ed. 1392: "In the present instance, moreover, the judge, by calling on the respondent to show cause, adjudged that, in his view, the petition was sufficient and by referring the cause to a master, evinced a judgment that the petition, the return, and the traverse made issues of fact justifying the taking of evidence. * * * The District Judge should himself have heard the prisoner's testimony and, in the light of it and the other testimony, himself have found the facts and based his disposition of the cause upon his findings. The petitioner has not been afforded the right of testifying before the judge, which the statute plainly accords him."

39 28 U.S.C.A. § 455; Ex parte Quirin, 317 U.S. 1, 5, 63 S.Ct. 1, 2, 87 L.Ed. 3; Walker v. Johnston, 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830.

40 28 U.S.C.A. §§ 459, 460, 461; Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Holiday v. Johnston, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392; Beckett v. Hudspeth, 10 Cir., 131 F.2d 195; O'Keith v. Johnston, 9 Cir., 122 F.2d 554.

41 Walker v. Johnston, 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830; 28 U.S. C.A. § 461.

42 This is the usual procedure in some federal courts; Ex parte Quirin, 317 U.S. 1, 24, 63 S.Ct. 1, 2, 87 L.Ed. 3. A report recently issued by the Administrative Office of the United States Courts

of course, exercise discretion appropriate to the circumstances of the case. This has been held many times by the Supreme Court,[43] and by other federal courts.[44] Only when alternatives [4] or [5] are appropriate can it be said with any degree of propriety that the judge's action is other than discretionary in character, and, presumably he must have done something approximating the exercise of discretion, to arrive at the conclusion that either [4] or [5] should be adopted.

 ▉ As alternative [5] was adopted by the trial judge in the present case, it becomes necessary to outline the principles and rules which controlled his action thus to determine whether it shall be upheld on this appeal. The first requirement which a petitioner must meet is that he make a prima facie case, within the meaning of the District of Columbia Code[45] or, in other words, must satisfy the equivalent and synonymous prerequisite of the federal statute,[46] that his petition show he is entitled to the writ.[47] The formal requirements for such a showing are, that [1] the petition be in writing[48] addressed to a court or judge authorized to issue the writ;[49] [2] it should establish the jurisdiction of the court by showing the place of petitioner's confinement,[50] that it is within its territorial jurisdiction,[51] the name and ad-

shows that in one district the writ was issued, apparently as a matter of course in every case. It must be remembered, however, that this is a method of convenience and not of law. In a district with a light calendar there may be justification for such a practice. In the District of Columbia, if such a practice were followed, it would require the entire time of at least one judge. (See text supra following note 10). It would be impossible to justify such an expenditure of judicial time and energy in a district in which the lives, liberties and property of hundreds of other persons would have to wait upon the extended hearing of petitions which, upon their faces and within the judicial knowledge of the court, are entirely lacking in merit. It is not then a matter of balancing convenience of judges against rights of parties, but of affording to all litigants their rightful day in court.

43 See, for example, Goto v. Lane, 265 U.S. 393, 401, 44 S.Ct. 525, 68 L.Ed. 1070; Salinger v. Loisel, 265 U.S. 224, 231–232, 44 S.Ct. 519, 68 L.Ed. 989; Wong Doo v. United States, 265 U.S. 239, 240, 44 S.Ct. 524, 68 L.Ed. 999; Ex parte Quirin, 317 U.S. 1, 24, 63 S.Ct. 1, 9, 87 L.Ed. 3: "Hence denial by the district court of leave to file the petitions in these causes was the judicial determination of a case or controversy, reviewable on appeal to the Court of Appeals and reviewable here by certiorari." See, also, Holiday v. Johnston, 313 U.S. 342, 350, 61 S.Ct. 1015, 85 L. Ed. 1392; Ex parte Hull, 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034.

44 Pope v. Huff, 79 U.S.App.D.C. 18, 19, 141 F.2d 727, 728; Hodge v. Huff, 78 U.S.App.D.C. 329, 332, 140 F.2d 686, 689; Biddle v. Hays, 8 Cir., 8 F.2d 937, 939; American Automobile Ins. Co. v. Freundt, 7 Cir., 103 F.2d 613, 617.

45 D.C.Code (1940) § 16—801: "Any person committed, detained, confined, or restrained from his lawful liberty within the District, under any color or pretense whatever, or any person in his or her behalf, may apply by petition to the District Court of the United States for the District of Columbia, or any justice thereof, for a writ of habeas corpus, to the end that the cause of such commitment, detainer, confinement, or restraint may be inquired into; and the court or the justice applied to, if the facts set forth in the petition make a prima facie case, shall forthwith grant such writ, directed to the officer or other person in whose custody or keeping the party so detained shall be, returnable forthwith before said court or justice"; see United States v. Sing Tuck, 194 U.S. 161, 170, 24 S.Ct. 621, 48 L. Ed. 917; United States v. Ju Toy, 198 U.S. 253, 261, 25 S.Ct. 644, 49 L.Ed. 1040; see Estabrook v. King, 8 Cir., 119 F.2d 607, 610.

46 28 U.S.C.A. § 455: "The court, or justice, or judge to whom such application is made shall forthwith award a writ of habeas corpus, unless it appears from the petition itself that the party is not entitled thereto. The writ shall be directed to the person in whose custody the party is detained."

47 United States ex rel. McCann v. Adams, 320 U.S. 220, 221, 64 S.Ct. 14, 15, 88 L.Ed. 4: "We cannot say that, in the light of the supporting affidavits, the petition for a writ of habeas corpus was palpably unmeritorious, and should have been dismissed without more."

48 28 U.S.C.A. § 454.

49 28 U.S.C.A. §§ 451, 452, 454; In re Greene, 78 U.S.App.D.C. 320, 140 F.2d 175; Brosius v. Botkin, 72 App.D.C. 29, 110 F.2d 49.

50 In re Rosier, 76 U.S.App.D.C. 214, 222, 133 F.2d 316, 324.

51 See McGowan v. Moody, 22 App.D.

dress of the person in whose custody the prisoner is restrained,[52] and any other jurisdictional fact which the nature of the case may require;[53] [3] it should state that petitioner is restrained of his liberty[54] and then show precisely the alleged illegality of restraint, by stating the pertinent facts, attaching exhibits or incorporating the record in such manner as to make possible an intelligent judgment upon the question;[55] [4] it should state by what authority respondent purports to detain him,[56] and if that authority is a warrant of commitment, a copy of it—together with a transcript of the record (or its essential parts) in the proceeding which resulted in the commitment or the validity of which is challenged—should be attached or set out in the petition.[57] [5] If petitioner does not know by what authority he is detained

C. 148; Ex parte Mitsuye Endo, 323 U. S. 283, 65 S.Ct. 208; cf. Laughlin v. Bennett, 79 U.S.App.D.C. 367, 147 F.2d 159.

[52] 28 U.S.C.A. § 454; Ex parte Cuddy, 131 U.S. 280, 9 S.Ct. 703, 33 L.Ed. 154; In re Rosier, 76 U.S.App.D.C. 214, 222, 133 F.2d 316, 324; see Sanders v. Allen, 69 App.D.C. 307, 100 F.2d 717.

[53] In re Burrus, 136 U.S. 586, 591, 10 S.Ct. 850, 34 L.Ed. 500; Herzog v. Colpoys, 79 U.S.App.D.C. 81, 143 F.2d 137; see King v. McLean, 1 Cir., 64 F. 331, 332, 26 L.R.A. 784; Ex parte Moebus, C.C.D.N.H., 148 F. 39.

[54] See 28 U.S.C.A. § 454.

[55] Ex parte Hull, 312 U.S. 546, 551, 61 S.Ct. 640, 85 L.Ed. 1034; Whitten v. Tomlinson, 160 U.S. 231, 242, 16 S. Ct. 297, 40 L.Ed. 406; Frank v. Mangum, 237 U.S. 309, 332, 35 S.Ct. 582, 59 L. Ed. 969; Kohl v. Lehlback, 160 U.S. 293, 296, 16 S.Ct. 304, 40 L.Ed. 432; Quagon v. Biddle, 8 Cir., 5 F.2d 608, 609; O'Connell ex rel. Kwong-Han Foo v. Ward, 1 Cir., 126 F.2d 615, 617; Fleenor v. Hammond, 6 Cir., 116 F.2d 982, 987, 132 A. L.R. 1241: "This is analogous to the rule that when a party invokes the power of the courts to hold a statute constitutionally invalid, he is not to be heard unless he has sustained or is in danger of sustaining a direct injury through its enforcement. Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; City of Allegan v. Consumers' Power Co., 6 Cir., 71 F.2d 477."; Osborne v. Johnston, 9 Cir., 120 F.2d 947; Johnson v. Middlebrooks, 5 Cir., 21 F.2d 964.

[56] 28 U.S.C.A. § 454; Ex parte Cuddy, 131 U.S. 280, 9 S.Ct. 703, 33 L.Ed. 154.

[57] Craemer v. Washington State, 168 U.S. 124, 128–129, 18 S.Ct. 1, 2, 42 L. Ed. 407: "By section 754 of the Revised Statutes [28 U.S.C.A. § 454] it is provided that the complaint in habeas corpus shall set forth 'the facts concerning the detention of the party restrained, in whose custody he is detained, and by virtue of what claim or authority, if known.' The general rule is undoubted that, if the detention is claimed to be unlawful by reason of the invalidity of the process or proceedings under which the party is held in custody, copies of such process or proceedings must be annexed to, or the essential parts thereof set out in the petition, and mere averments of conclusions of law are necessarily inadequate. Whitten v. Tomlinson, 160 U.S. 231, 16 S.Ct. 297 [40 L.Ed. 406]; Kohl v. Lehlback, 160 U.S. 293, 16 S.Ct. 304 [40 L.Ed. 432]; Church on Habeas Corpus (2d Ed.) § 91, and cases cited. Copies of the information, the verdict, and the judgment thereon were not attached to this petition, nor the essential parts thereof stated, nor any cause assigned for such omission. In that regard the petition was wholly insufficient. But reference was made to the record of the case in the Superior Court of King County, in the Supreme Court of the State, and in this court. The record here, to which we may properly refer Butler v. Eaton, 141 U.S. 240, 11 S.Ct. 985 [35 L.Ed. 713], shows that the information charged Craemer with the crime of murder in the first degree; that the jury 'found him guilty as charged'; that he was adjudged guilty of the crime of murder in the first degree, and sentenced to death; that the judgment was affirmed; and that the writ of error to the state court was dismissed. If the point now suggested was not in fact specifically raised in the Supreme Court of the State on appeal, or in this court on writ of error, it must not be assumed that any point on which the jurisdiction might have been sustained was overlooked."; Terlinden v. Ames, 184 U.S. 270, 279, 22 S.Ct. 484, 488, 46 L.Ed. 534: "Petitioner could not select a portion of the documents accompanying the complaint and ask the court to sustain his conclusion of law thereon. Nor could he subsequently supply the inadequacy of the traverse by a certiorari, which could do no more, if it could be, in any view, properly issued at that stage of the proceedings, than bring up what he should have furnished in the first instance."; Andersen v. Treat, 172 U.S. 24, 29, 19 S.Ct. 67, 43 L.Ed. 351; Low Wah Suey v. Backus, 225 U.S. 460, 472, 32 S.Ct. 734, 56 L.Ed. 1165; Cronin v. Ennis, 8 Cir., 11 F.2d 237, 239; O'Connell ex rel. Kwong Han Foo v. Ward, 1 Cir., 126

he should so state,[58] and if he is unable to append the record, he should show cause for the omission.[59] [6] The petition must be verified.[60]

If the petition omits any of the specified essential requirements it fails to establish a prima facie case. However, it does not follow that such a petition should be denied forthwith. Several other possibilities occur at this point. Thus, if a petition is insufficient in substance, the judge to whom it is presented may, in the interest of justice permit or require its amendment.[61] This is particularly true where the petition is the product of petitioner's own inexpert draftsmanship.[62] Again, if any essential item has been omitted, the defect may be cured by information appearing in the record; under the rule that both the petition and facts of which the court is required to take judicial notice, together, constitute the application for the writ.[63]

To this end the judge should examine the record of the proceeding which constitutes the basis for petitioner's commitment, whether a criminal trial,[64] or a lunacy proceeding,[65] a deportation proceeding,[66] or otherwise.[67]

If a prior application for a writ of habeas corpus has been made, in the same case, by the petitioner, or in his behalf, whether in this or some other jurisdiction, the petition should so state and such other facts and documents should be set out as will allow the judge properly to determine whether the issues presented by the present petition were decided in a former proceeding; thus enabling him to exercise his discretion accordingly.[68] Though the doctrine of res judicata does not apply to habeas corpus cases,[69] the fact that the same issues have been decided in a former proceeding may, and sometimes should, as a matter of judicial discretion,

F.2d 615; Ex parte Hull, 312 U.S. 546, 551, 61 S.Ct. 640, 85 L.Ed. 1034.

[58] Ex parte Cuddy, 131 U.S. 280, 283, 9 S.Ct. 703, 33 L.Ed. 154.

[59] Harrison's Case, 1 Cranch, C.C. 159, 11 Fed.Cas.No.6,131; United States v. Bollman, 1 Cranch, C.C. 373, 24 Fed.Cas. No.14,622; Ex parte Jew You On, D.C. N.D.Cal., 16 F.2d 153; Hom Moon Ong v. Nagle, 9 Cir., 32 F.2d 470, 472.

[60] 28 U.S.C.A. § 454. The wording of the statute seems clearly to imply that under some circumstances the petition may be made and verified by a person other than the person detained: See United States ex rel. Funaro v. Watchorn, C.C.N.Y., 164 F. 152. However the reason why he did not personally verify the petition should be set forth: See Ex parte Baez, 177 U.S. 378, 20 S.Ct. 673, 44 L.Ed. 813. The verification may be on information and belief: Ex parte Delgado, 12 Porto Rico 258. See, also, Collins v. Traeger, 9 Cir., 27 F.2d 842, 843.

[61] Holiday v. Johnston, 313 U.S. 342, 350, 61 S.Ct. 1015, 85 L.Ed. 1392.

[62] Pyle v. Kansas, 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214; Williams v. Kaiser, 323 U.S. 471, 475, 65 S.Ct. 363.

[63] Andersen v. Treat, 172 U.S. 24, 29, 31, 19 S.Ct. 67, 43 L.Ed. 351; Ex parte Zimmerman, 9 Cir., 132 F.2d 442, 445–446; Pagett v. McCauley, 9 Cir., 95 F.2d 839; Rookard v. Huff, 79 U.S.App. D.C. 291, 145 F.2d 708. See note 73 infra; see, also, Walker v. Johnston, 312 U.S. 275, 284, 61 S.Ct. 574, 85 L.Ed. 830; cf. Holiday v. Johnston, 313 U.S. 342, 349, 61 S.Ct. 1015, 85 L.Ed. 1392.

[64] See Hodge v. Huff, 78 U.S.App.D.C. 329, 140 F.2d 686; Williams v. Huff, 79 U.S.App.D.C. 31, 142 F.2d 91; Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L. Ed. 1034; Cochran v. Kansas, 316 U.S. 255, 256, 62 S.Ct. 1068, 86 L.Ed. 1453; Hill v. United States ex rel. Wampler, 298 U.S. 460, 467, 56 S.Ct. 760, 80 L. Ed. 1283.

[65] Wrobel v. Overholser, 79 U.S.App. D.C. 293, 145 F.2d 859; Barry v. Hall, 68 App.D.C. 350, 98 F.2d 222.

[66] Kwock Jan Fat v. White, 253 U.S. 454, 40 S.Ct. 566, 64 L.Ed. 1010; Low Wah Suey v. Backus, 225 U.S. 460, 472, 32 S.Ct. 734, 56 L.Ed. 1165.

[67] Cf. Wellman v. Moore, 76 U.S.App. D.C. 175, 130 F.2d 438.

[68] Salinger v. Loisel, 265 U.S. 224, 232, 44 S.Ct. 519, 522, 68 L.Ed. 989: "As a further safeguard against abuse, the court, *if not otherwise informed*, may on receiving an application for the writ require the applicant to show whether he has made a prior application, and, if so, what action was had on it." [Italics supplied]; Pope v. Huff, 79 U.S.App.D.C. 18, 19, 141 F.2d 727, 728; Board v. Bennett, 72 App.D.C. 269, 272, 114 F.2d 578, 581.

[69] Waley v. Johnston, 316 U.S. 101, 105, 62 S.Ct. 964, 86 L.Ed. 1302. See in this connection proposed legislation to change this rule, prepared by a Committee of the Conference of Senior Circuit Judges, of which Judge John J. Parker is Chairman: Report of Judicial Conference, September Session, 1943, p. 22.

be given controlling weight.[70] If, for example, the judge, to whom is presented a petition, together with a request for leave to file, ascertains that petitioner has on a previous petition had a full hearing upon the same identical allegations, it would follow that leave to file the second petition should be denied.[71]

It is apparent, therefore, that the words of the statute—*from the petition itself*—include information, available to the judge by judicial notice,[72] to which the allegations of the petition refer, or upon which which they depend; it is the duty of the judge to look through the petition, to the record, in order that he may discover such information;[73] having done so, the exercise of sound judicial discretion may require that the petition be dismissed or leave to file it denied.[74] In fact, this power and duty of the judge extends not only to the records of his own court, but to those of other courts as well.[75]

Language in some of the cases, suggesting an analogy to the situation faced by a trial judge to whom is presented a demurrer to a complaint in the ordinary civil case,[76] is deceptive and misleading. This is especially true as regards a petition which is presented together with a request for leave to file. There is, at that point, no admission, by an adverse party, of facts well pleaded, for the purpose of testing questions of law or for any other purpose; there are, in fact, no adverse parties, for the proceeding at that point is ex parte;[77] there is no necessity for answer or plea to raise the question whether the same issues presented in the petition were decided in a former proceeding and, if so, whether that fact should be given controlling weight[78]—a question which in

---

[70] Pope v. Huff, 79 U.S.App.D.C. 18, 19, 141 F.2d 727, 728.

[71] Rutledge, J., dissenting in In re Rosier, 76 U.S.App.D.C. 214, 231, 133 F. 2d 316, 333; Rookard v. Huff, — U.S. App.D.C. —, 145 F.2d 708, and authorities there cited; 2 Freeman, Judgments 5th ed.1925) p. 1766, § 829: "If a final adjudication upon a habeas corpus is not to be deemed res adjudicata, the consequence will be lamentable. This favored writ will become an engine of oppression, instead of a writ of liberty."; Slaughter v. Wright, 4 Cir., 135 F.2d 613.

[72] Rookard v. Huff, 79 U.S.App.D.C. 291, 145 F.2d 708, and authorities there cited.

[73] See cases cited supra notes 63, 64, 65, 66, 67.

[74] See cases cited supra notes 70, 71.

[75] Wells v. United States, 318 U.S. 257, 260, 63 S.Ct. 582, 87 L.Ed. 746; Beard v. Bennett, 72 App.D.C. 269, 114 F.2d 578. If the petition challenges a commitment of a state court it should show also that petitioner has exhausted remedies available to him in the courts of that state. Herzog v. Colpoys, 79 U.S. App.D.C. 81, 143 F.2d 137; Ex parte Hawke, 321 U.S. 114, 64 S.Ct. 448, 68 L.Ed. 572. And see in this connection proposed legislation prepared by a Committee of the Conference of Senior Circuit Judges, of which Judge John J. Parker is Chairman: Report of the Judicial Conference, September Session, 1943, p. 22; cf. Craemer v. Washington State, 168 U.S. 124, 129, 18 S.Ct. 1, 42

L.Ed. 407; Butler v. Eaton, 141 U.S. 240, 244, 11 S.Ct. 985, 35 L.Ed. 713.

[76] Even after leave has been granted and the petition filed, neither the federal statute nor the District of Columbia Code contemplates the use of a demurrer to the petition. In Moore v. Dempsey, 261 U.S. 86, 87, 43 S.Ct. 265, 67 L.Ed. 543, the Court speaks of facts admitted by the demurrer to the petition. In that case, it seems apparent that the practice conformed to that of the State of Arkansas, and, perhaps, of the common law. See Church, Habeas Corpus (2d ed. 1893) p. 243, § 159, n. 3: *"Demurrer to petition* is not good practice, though it has been allowed: Hovey v. Morris, 7 Blackf. [Ind.] 559." The analogy was used, also, by the Supreme Court in Frank v. Mangum, 237 U.S. 309, 332, 35 S.Ct. 582, 589, 59 L.Ed. 969, but the Court went on, immediately, to say: "Now the obligation resting upon us, as upon the district court, to look through the form and into the very heart and substance of the matter, *applies as well* to the averments of the petition as *to the proceedings which the petitioner attacks."* [Italics supplied.]

[77] In re Barry, 136 U.S. 597, 615, 34 L.Ed. 503; see Ferris, Extraordinary Legal Remedies, (1926) § 10, p. 28. See, for example, Ex parte Quirin, D.C., 47 F.Supp. 431, 317 U.S. 1, 63 S.Ct. 1, 2, 87 L.Ed. 3; and the many cases titled "Ex parte" in the reports of the Supreme Court.

[78] Pope v. Huff, 79 U.S.App.D.C. 18, 19, 141 F.2d 727, 728; Rookard v. Huff, 79 U.S.App.D.C. 291, 145 F.2d 708.

the ordinary civil case would be waived by demurrer and of which a trial judge would take no notice unless specially pleaded.[79] When such a petition, accompanied by a request for leave to file, is presented to a trial judge he must determine its sufficiency, with respect both to law and fact, not only upon the allegations well pleaded, but upon the whole record. For this purpose the record in the earlier proceedings imports verity;[80] it is treated as part of the record in the later proceeding;[81] and only to the extent that the allegations of the petition in the later proceeding are consistent with the record, will they be assumed to be true.[82]

▮▮▮▮▮ The judgment under which a petitioner is detained is impervious to his collateral attack,[83] unless his petition sufficiently challenges the jurisdiction of the court which committed him.[84] This it can do by showing either that the court had no jurisdiction to try the petitioner,[85] or that

[79] Polish-American Building & Loan Ass'n, Inc. v. Dembowczyk, 167 Md. 259, 173 A. 254; Cuff v. United States, 9 Cir., 64 F.2d 624, 627; Keown v. Hughes, 1 Cir., 265 F. 572, 575; see Hewitt v. Great Western Beet Sugar Co., 9 Cir., 230 F.2d 394, 398; see 101 A.L.R. 1325; 120 A.L.R. 85, 132.

[80] Riddle v. Dyche, 262 U.S. 333, 336, 43 S.Ct. 555, 67 L.Ed. 1009, citing Ex parte Tobias Watkins, 3 Pet. 193, 202–203, 207, 7 L.Ed. 650, In re Lennon, supra, 166 U.S. 553, 17 S.Ct. 658, 41 L.Ed. 1110; Grignon's Lessee v. Astor, 2 How. 319, 340–342, 11 L.Ed. 283; Matter of Gregory, 219 U.S. 210, 213–214, 218, 31 S.Ct. 143, 55 L.Ed. 184, 2 Black on Judgments, § 625; 1 Id., § 254.

[81] Frank v. Mangum, 237 U.S. 309, 329, 35 S.Ct. 582, 59 L.Ed. 969; Williams v. Kaiser, 323 U.S. 471, 475, 65 S.Ct. 363; Andersen v. Treat, 172 U.S. 24, 29, 31, 19 S.Ct. 67, 69, 43 L.Ed. 351: "The petition was insufficient in not setting forth the proceedings, or the essential parts thereof, prior to August 26, 1898, on which day it was presented; and it was very properly conceded on the hearing of this appeal that the record of Andersen's trial and conviction and of the proceedings on error *was to be treated as part of the record*, and it was referred to by counsel on both sides accordingly. * * * The general rule is that the judgment of a court having jurisdiction of the offense charged and of the party charged with its commission is not open to collateral attack. The exceptions to this rule when some essential right has been denied need not be considered, for whether this application was tested *on the petition alone, treating the record as part thereof*, or heard, without objection, as on rule to show cause, the district court could not have done otherwise than deny the writ." [Italics supplied]

[82] See cases cited supra note 79. Cf. Williams v. Kaiser, 323 U.S. 471, 475, 65 S.Ct. 363, 365: "The Missouri Supreme Court did not indicate the reasons for its denial of the petition beyond the statement that the petition failed to state a cause of action. Whatever the grounds of that decision it is binding on us insofar as state law is concerned. Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859. But the right to counsel in cases of this type is a right protected by the Fourteenth Amendment of the federal Constitution. The question whether that federal right has been infringed is not foreclosed here, even though the action of the state court was on the ground that its statute requiring the appointment of counsel was not violated. * * * The allegations contained in the petition *are not inconsistent with the recitals of the certified copy of the sentence and judgment* which accompanied the petition and under which petioner is confined. Hence we must assume that the allegations of the petition are true. Smith v. O'Grady, supra. Read in that light we think the petition makes a prima facie showing of denial of the constitutional right. * * * Like other judgments, a judgment based upon a plea of guilty is not of course to be lightly impeached in collateral proceedings. See Johnson v. Zerbst, 304 U.S. 458, 468–469, 58 S.Ct. 1019, 1024, 1025, 82 L.Ed. 1461, 146 A.L.R. 357. But a plea of guilty to a capital offense made by one who asked for counsel but could not obtain one and who was 'incapable adequately of making his own defense' stands on a different footing." [Italics supplied]

[83] Hodge v. Huff, 78 U.S.App.D.C. 329, 330, 140 F.2d 686, 687, and cases cited; Warring v. Colpoys, 74 App.D.C. 303, 305, 122 F.2d 642, 644, 136 A.L.R. 1025.

[84] Bowen v. Johnston, 306 U.S. 19, 23, 59 S.Ct. 442, 83 L.Ed. 455; Hodge v. Huff, 78 U.S.App.D.C. 329, 330, 140 F.2d 686, 687, and cases cited.

[85] Bowen v. Johnston, 306 U.S. 19, 23, 59 S.Ct. 442, 83 L.Ed. 455; Ex parte Crow Dog, 109 U.S. 556, 572, 3 S.Ct. 396, 27 L.Ed. 1030; United States v. Davis, 18 App.D.C. 280, 283: "That a

during its proceedings his constitutional rights were so far denied that the court lost jurisdiction.[86] The use of the writ in the latter event is intended to afford a remedy where the circumstances are so exceptional that it is the only means of preserving those rights;[87] and in this event the writ of habeas corpus may be used, not only to search the record, but even to look behind and beyond the record; to inquire into such facts whether they appear upon the record or not;[88] thus giving to a person in custody a judicial inquiry "into the very truth and substance of the causes of his detention."[89]

It has been suggested that the Supreme Court in the Bowen case,[90] and in other recent cases, intended to say that the writ of habeas corpus is available, not only when jurisdiction is lost during the course of the proceeding by deprivation of a constitutional right, but also whenever a petitioner is able to allege that he failed to enjoy a constitutional right. We see no reason to impute such an intention to the Supreme Court.[91] A careful reading of its

writ of habeas corpus cannot be made to perform the office of a writ of error, is a principle in regard to which all authorities agree in holding. When a party is in prison in execution of a judgment or sentence of a court of competent jurisdiction, he cannot be released on habeas corpus, unless he can clearly show, that the judgment, for causes apparent upon its face, *is an absolute nullity.* The question of errors or defects in the proceeding upon which the conviction is founded will not be entertained, in a collateral proceeding by habeas corpus. This doctrine is nowhere more clearly stated than by Chief Justice Marshall, in the leading case of Ex parte Watkins, 3 Pet. 193 [7 L.Ed. 650.]" [Italics supplied]

[86] Bowen v. Johnston, 306 U.S. 19, 24, 59 S.Ct. 442, 83 L.Ed. 455; In re Bonner, 151 U.S. 242, 257, 14 S.Ct. 323, 38 L.Ed. 149 (sentence in excess of law); Mooney v. Holohan, 294 U.S. 103, 112–113, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406 (perjured testimony deliberately used); Hans Nielsen, 131 U.S. 176, 182, 9 S.Ct. 672, 33 L.Ed. 118 (double jeopardy); Moore v. Dempsey, 261 U.S. 86, 91, 43 S.Ct. 265, 266, 67 L.Ed. 543 (mob domination of trial): "It certainly is true that mere mistakes of law in the course of a trial are not to be corrected in that way. But if the case is that the whole proceeding is a mask—that counsel, jury and judge were swept to the fatal end by an irresistible wave of public passion, and that the State Courts failed to correct the wrong, neither perfection in the machinery for correction nor the possibility that the trial court and counsel saw no other way of avoiding an immediate outbreak of the mob can prevent this Court from securing to the petitioners their constitutional rights."; Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (no representation by counsel); Eury v. Huff, 4 Cir., 141 F.2d 554.

[87] Waley v. Johnston, 316 U.S. 101,

105, 62 S.Ct. 964, 86 L.Ed. 1302; Johnson v. Zerbst, 304 U.S. 458, 467, 58 S.Ct. 1019, 82 L.Ed. 1461; United States ex rel. Innes v. Hiatt, 3 Cir., 141 F.2d 664, 665–666; Bozel v. Hudspeth, 10 Cir., 126 F.2d 585, 587.

[88] Frank v. Mangum, 237 U.S. 309, 331, 35 S.Ct. 582, 59 L.Ed. 969; Riddle v. Dyche, 262 U.S. 333, 336, 43 S.Ct. 555, 67 L.Ed. 1009.

[89] Johnson v. Zerbst, 304 U.S. 458, 466, 58 S.Ct. 1019, 82 L.Ed. 1461; Walker v. Johnston, 312 U.S. 275, 285–286, 61 S.Ct. 574, 85 L.Ed. 830. See Holtzoff, Collateral Review of Convictions in Federal Courts, 25 B.U.L.Rev. 26, 32.

[90] Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455.

[91] The pertinent language of the Bowen case reads as follows (306 U.S. 23, 59 S.Ct. 444): "The judgment of conviction is not subject to collateral attack. Ex parte Watkins, 3 Pet. 193, 203, 7 L.Ed. 650; Ex parte Parks, 93 U.S. 18, 23, 23 L.Ed. 787; Harlan v. McGourin, 218 U.S. 442, 448, 31 S.Ct. 44, 47, 54 L.Ed. 1101, 21 Ann.Cas. 849; McMicking v. Schields, 238 U.S. 99, 107, 35 S.Ct. 665, 667, 59 L.Ed. 1220; Riddle v. Dyche, 262 U.S. 333, 335, 43 S.Ct. 555, 67 L.Ed. 1009; Craig v. Hecht, 263 U.S. 255, 277, 44 S.Ct. 103, 106, 68 L.Ed. 293. The scope of review on habeas corpus *is limited to the examination of the jurisdiction of the court* whose judgment of conviction is challenged. Ex parte Siebold, 100 U.S. 371, 375, 25 L.Ed. 717; Ex parte Bigelow, 113 U.S. 328, 331, 5 S.Ct. 542, 544, 28 L.Ed. 1005; Matter of Gregory, 219 U.S. 210, 213, 31 S.Ct. 143, 55 L.Ed. 184; Glasgow v. Moyer, 225 U.S. 420, 429, 32 S.Ct. 753, 756, 56 L.Ed. 1147; Knewel v. Egan, 268 U.S. 442, 445, 45 S.Ct. 522, 524, 69 L.Ed. 1036. But if it be found that the court had no jurisdiction to try the petitioner, or that in its proceedings his constitutional rights have been denied, the remedy of habeas corpus is available. Ex parte Lange, 18 Wall. 163, 178, 21 L.Ed.

opinions will show that it is not the purpose of the writ to *compel* or *require* enjoyment of constitutional rights in all cases where, for example, they have been waived, intelligently by the petitioner himself,[92] or for him by counsel.[93] The applicable rule has been well stated by Judge Parker: "Ordinarily, failure to raise a constitutional question during trial amounts to waiver thereof (United States [ex rel. Jackson] v. Brady, 4 Cir., 133 F.2d 476, 481), and only where failure to raise the question at the trial was due to ignorance, duress or other reason for which petitioner should not be held responsible, may resort be had to habeas corpus in the federal courts, and, even in these cases, only where it is made to appear that there has been such gross violation of constitutional right as to deny to the prisoner the substance of a fair trial and thus oust the court of jurisdiction to impose sentence." [94]

Our conclusion is fortified, also, by the Supreme Court's contemporaneous restatement [95] of the rule previously declared that the writ of habeas corpus cannot be used for the purpose of an appeal,[96] or to retry the issues, whether of

---

872; Ex parte Crow Dog, 109 U.S. 556, 572, 3 S.Ct. 396, 406, 27 L.Ed. 1030; In re Snow, 120 U.S. 274, 285, 7 S.Ct. 556, 561, 30 L.Ed. 658; In re Coy, 127 U.S. 731, 758, 8 S.Ct. 1263, 1272, 32 L. Ed. 274; Hans Nielsen, Petitioner, 131 U.S. 176, 182, 9 S.Ct. 672, 674, 33 L.Ed. 118; In re Bonner, 151 U.S. 242, 257, 14 S.Ct. 323, 325, 38 L. Ed. 149; Moore v. Dempsey, 261 U.S. 86, 91, 43 S.Ct. 265, 266, 67 L.Ed. 543; Johnson v. Zerbst, 304 U.S. 458, 467, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461." [Italics supplied]. The statement which we have italicized is unqualified. The statement "or that in its proceedings his constitutional rights have been denied" is coupled with the statement "if it be found that the court had no jurisdiction to try the petitioner." Obviously, the Court intended, thus, to specify two situations in which the jurisdiction of the court may properly be challenged: First, where it had no jurisdiction to begin with; second, where it lost jurisdiction because of deprivation of constitutional rights. "That this interpretation of the Supreme Court's language is correct will appear (also) from an examination of the sustaining authorities, which are cited in the case immediately following the clause under discussion."; Graham v. Squier, 9 Cir., 132 F.2d 681, 683–684, certiorari denied, Graham v. Warden, 318 U.S. 777, 63 S. Ct. 830, 87 L.Ed. 1145; see, also, Collins v. McDonald, 258 U.S. 416, 420, 42 S.Ct. 326, 66 L.Ed. 692; Burall v. Johnson, 9 Cir., 134 F.2d 614, certiorari denied 319 U.S. 768, 63 S.Ct. 1327, 87 L.Ed. 1717, rehearing denied 320 U.S. 810, 64 S.Ct. 30; Eury v. Huff, 4 Cir., 141 F.2d 554; Sanderlin v. Smyth, 4 Cir., 138 F.2d 729; Cash v. Huff, 4 Cir., 142 F.2d 60; Miller v. Hiatt, 3 Cir., 141 F.2d 690; Eury v. Huff, 79 U.S.App. D.C. 289, 146 F.2d 17; Bozel v. Hudspeth, 10 Cir., 126 F.2d 585; Friedberg v. United States, 5 Cir., 69 F.2d 170;

United States v. Davis, 18 App.D.C. 280, 283; In re Schneider, 148 U.S. 162, 13 S.Ct. 572, 37 L.Ed. 406; See Holtzoff Collateral Review of Convictions in Federal Courts, 25 B.U.L.Rev. 26, 40.

[92] Adams v. United States ex rel. McCann, 317 U.S. 269, 276, 63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435; Walker v. Chitty, 9 Cir., 112 F.2d 79, 81.

[93] Patton v. United States, 281 U.S. 276, 298, 50 S.Ct. 253, 258, 74 L.Ed. 854, 70 A.L.R. 263: "Upon this view of the constitutional provisions we conclude that Article III, Section 2, is not jurisdictional, but was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so is to convert a privilege into an imperative requirement."; Eury v. Huff, 4 Cir., 141 F.2d 554; Walker v. Chitty, 9 Cir., 112 F.2d 79, 81; Caballero v. Hudspeth, 10 Cir., 114 F.2d 545.

[94] Sanderlin v. Smyth, 4 Cir., 138 F.2d 729, 731.

[95] See, for a recent example, Adams v. United States ex rel. McCann, 317 U.S. 269, 274, 63 S.Ct. 236, 239, 87 L.Ed. 268, 143 A.L.R. 435: "Of course the writ of habeas corpus should not do service for an appeal. Glasgow v. Moyer, 225 U.S. 420, 428, 32 S.Ct. 753, 755, 56 L. Ed. 1147; Matter of Gregory, 219 U.S. 210, 213, 31 S.Ct. 143, 55 L.Ed. 184. This rule must be strictly observed if orderly appellate procedure is to be maintained. Mere convenience cannot justify use of the writ as a substitute for an appeal."

[96] Riddle v. Dyche, 262 U.S. 333, 335, 43 S.Ct. 555, 67 L.Ed. 1009; Glasgow v. Moyer, 225 U.S. 420, 428, 429, 430, 32 S.Ct. 753, 56 L.Ed. 1147; In re Lincoln, 202 U.S. 178, 26 S.Ct. 602, 50 L. Ed. 984; Harlan v. McGourin, 218 U.S. 442, 31 S.Ct. 44, 54 L.Ed. 1101, 21 Ann. Cas. 849; see, also, Warring v. Colpoys, 74 App.D.C. 303, 122 F.2d 642, 136 A. L.R. 1025, certiorari denied 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543.

874

law or of fact.[97] Bearing in mind that the use of the writ, in a case involving deprivation of constitutional rights, is limited to the exceptional situation in which it is the only means of preserving such rights,[98] it is obvious that no useful or necessary purpose would be served by trying—over and over again—in habeas corpus proceedings, the same questions which were fully considered and fairly determined in the original proceeding.

The dangerous possibilities of a too-liberal use of the writ for review purposes are emphasized by the fact that—unlike most of the state courts—no provision is made for official court reporters in federal trial courts and few transcripts are available. If the presumption of regularity of proceedings[99] were permitted to be lightly upset by irresponsible allegations, the judges, to whom petitions for writs of habeas corpus are presented, would be forced to look back of and beyond records, into unreported proceedings, conducted by other judges, with witnesses, lawyers and other court officers long since dead or scattered. The problem would be intensified, also, by the fact that a large percentage of commitments are based upon pleas of guilty. A premium would be placed upon deception if an accused person could plead guilty; wait until the case had become "cold" and then, by challenging jurisdiction or alleging deprivation of constitutional rights, secure a reopening and new trial of his case. If greater safeguards are needed in original proceedings, they should be provided. But it will not solve any problem, which may exist there, to permit large-scale use of this extraordinary writ for review purposes. Instead, it would

cause confusion worse confounded.[100] It would be fantastic, so to interpret the Supreme Court's decisions as to permit and invite such a wholesale retrial of thousands of cases which have been regularly disposed of during the normal course of trial court proceedings. Obviously the Supreme Court intended no such result. This is reflected in such decisions as Ex parte Hull [101] in which, less than a month after it decided Walker v. Johnston,[102] the Supreme Court said [312 U.S. 546, 61 S.Ct. 642]: "We conclude that the showing made by the petition and exhibits is insufficient to compel an order requiring the warden to answer. Petitioner was represented by counsel throughout the second trial. Yet there is no claim in the petition that he objected to evidence tending to establish a different date for commission of the offense, or that he claimed surprise, or that he moved for a continuance to enable him to secure other witnesses. He does not allege that at the time of the trial he had an alibi for any other date, nor does he make clear the actual extent of any variance. *Furthermore, ascertainment of these facts is impossible since petitioner has not furnished the transcript taken at the second trial. Accordingly, it would be improper to inquire whether petitioner was denied procedural due process in the second trial.* Compare Hardy v. United States, 186 U.S. 224, 225, 22 S.Ct. 889, 46 L.Ed. 1137; Ledbetter v. United States, 170 U.S. 606, 612, 18 S.Ct. 774, 776, 42 L.Ed. 1162; Hodgson v. Vermont, 168 U.S. 262, 271, 18 S.Ct. 80, 82, 42 L.Ed. 461; Matthews v. United States, 161 U.S. 500, 16 S.Ct. 640, 40 L.Ed. 786." [Italics supplied] In several more recent cases, the rule has been stated or rec-

---

97 Glasgow v. Moyer, 225 U.S. 420, 429, 32 S.Ct. 753, 56 L.Ed. 1147.

98 See note 87, supra; cf. Pyle v. Kansas, 317 U.S. 213, 216, 63 S.Ct. 177, 178, 87 L.Ed. 214: "The record of petitioner's conviction, while regular on its face, manifestly does not controvert the charges that perjured evidence was used, and that favorable evidence was suppressed with the knowledge of the Kansas authorities. *No determination of the verity of these allegations appears to have been made.* The case is therefore remanded for further proceedings. Cochran v. Kansas, supra [316 U.S. 255, 62 S.Ct. 1068, 36 L.Ed. 1453]; Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859; cf. Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302." [Italics supplied]

99 Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461: "It must be remembered, however, that a judgment can not be lightly set aside by collateral attack, even on habeas corpus. When collaterally attacked, the judgment of a court carries with it a presumption of regularity."

100 Glasgow v. Moyer, 225 U.S. 420, 430, 32 S.Ct. 753, 756, 56 L.Ed. 1147: "It would introduce confusion in the administration of justice if the defenses which might have been made in an action could be reserved as grounds of attack upon the judgment after the trial and verdict."

101 312 U.S. 546, 551, 61 S.Ct. 640, 85 L.Ed. 1034.

102 312 U.S. 275, 284, 286, 61 S.Ct. 574, 85 L.Ed. 830.

ognized by the Supreme Court,[103] and by other federal courts.[104]

■ No question is raised, on this appeal, as to the original jurisdiction of the Court over the case in which appellant was committed to the custody of appellee, or over appellant himself and no contention is made that jurisdiction was lost during the proceedings except as that contention may be suggested by certain allegations of the petition. Thus, the petition alleges: " * * * your petitioner will show that his rights have been abused, as according to the Constitution of the United States." Disregarding the ineptness of phrasing and giving to this allegation its fullest possible meaning, it constitutes merely a general conclusion, insufficient to present an issue.[105]

■ The petition continues: "Petitioner states that there is a clause in the 6th Amendment that says, 'that in all criminal cases the accused shall have the assistance of counsel for his defense.' Your petitioner was not represented by counsel at his arraignment on March 1, 1943. Petitioner believes that he is being restrained of his liberty in violation of his rights, according to the 6th Amendment." The first and third sentences of this allegation are also generalizations and conclusions, insuffi-

cient to present an issue. So far as concerns the second sentence, there are two answers. The record shows that appellant was twice arraigned. On the first occasion—of which he complains—he pleaded *not guilty;* thereafter counsel was assigned to represent him. Up to this point, therefore, no rights had been violated and no vantage lost.[106] Cases relied upon by appellant are ones in which accused persons, unrepresented by counsel, pleaded *guilty,* thus prejudicially waiving their rights to jury trial, or to the advice of counsel in deciding, intelligently, to waive or not to waive.[107] In the second place, there is no absolute requirement that a defendant be represented by counsel.[108] An accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may competently and intelligently waive his constitutional right to assistance of counsel.[109] Hence, the mere fact that an accused was not represented by counsel is not in itself, alone, a sufficient basis for granting a writ.[110]

■ The fact that appellant was represented by counsel on his second arraignment appears, not only from the record, but from his own petition. In fact, alleged *misrepresentation* by his assigned counsel constitutes the next ground relied upon by

---

[103] Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302; Cochran v. Kansas, 316 U.S. 255, 256, 62 S.Ct. 1068, 1069, 86 L.Ed. 1453: "The Kansas Supreme Court denied the writ, stating that 'the records of courts are not set aside upon the unsupported statements of a defeated litigant.' Cochran v. Amrine, 153 Kan. 777, 113 P.2d 1048, 1049. We accept the court's conclusion that the record, showing that Cochran was represented by counsel throughout, and revealing on its face no irregularities in the trial, is sufficient refutation of his unsupported charge that he was denied the right to summon witnesses and testify for himself." Ex parte Quirin, 317 U.S. 1, 18, 24, 48, 63 S.Ct. 1, 2, 87 L.Ed. 3, affirming Ex parte Quirin, D.C., 47 F.Supp. 431, in which the District Court denied leave to file a petition for habeas corpus.

[104] Slaughter v. Wright, 4 Cir., 135 F.2d 613; McCord v. Page, 5 Cir., 124 F.2d 68; cases cited supra note 63.

[105] See note 55 supra.

[106] McJordan v. Huff, 77 U.S.App.D.C. 171, 133 F.2d 408.

[107] Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Evans v. Rives, 75 U.S.App.D.C. 242, 126 F.2d 633; Wood v. United States, 75 U.S.App. D.C. 274, 128 F.2d 265, 141 A.L.R. 1318.

[108] See, generally, Betts v. Brady, 316 U.S. 455, 461–473, 62 S.Ct. 1252, 86 L. Ed. 1595; Holtzoff, The Right of Counsel, 20 N.Y.U.L.Q.Rev. 1, 9–19.

[109] Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268, 143 A.L.R. 435: "There is nothing in the Constitution to prevent an accused from choosing to have his fate tried before a judge without a jury even though, in deciding what is best for himself, he follows the guidance of his own wisdom and not that of a lawyer. In taking a contrary view, the court below appears to have been largely influenced by the radiations of this Court's opinion in Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. But Patton v. United States, supra, and Johnson v. Zerbst, supra, were left wholly unimpaired by the ruling in the Glasser case."

[110] McJordan v. Huff, 77 U.S.App.D.C. 171, 133 F.2d 408. See, Garland v. State of Washington, 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772.

him for a writ, namely: "* * * the attorney, appointed by the Court, informed your petitioner that he had reached an agreement with the Assistant United States Attorney and for me to plead guilty, so I would go into the Armed Services—instead, your petitioner received a sentence of from 3 to 9 years." [111] In a case recently decided by this Court [112] we said of a similar allegation: "The substance of his allegations is that he pleaded guilty on the advice of his counsel and received a longer sentence than both hoped. If that were sufficient to show that his plea was not intelligently made, few, if any, convictions and sentences on pleas of guilty would be valid. A mere disappointed expectation of great leniency does not vitiate a plea." This statement is equally applicable in the present case.

In the case just cited the petitioner relied upon his attorney's assurance that "he was a personal friend of the Trial Court Justice." Here he relied upon his attorney's assurance that he had reached an agreement with the District Attorney. There is no allegation that the District Attorney made any representation to petitioner himself. In each case the decision to plead guilty was made following consultation with an attorney and upon his advice, and, so far as appears, with full understanding of what was being done; each petitioner, so far as appears, knew it was for the judge to say whether a lenient sentence in the one case, or probation in the other, should be given.

 Everyone who is acquainted with the realities of practice knows the desire of some convicted persons to have their cases tried over again and their frequent repudiation of counsel after their hopes for acquittal or for lenient punishment have failed to materialize. It is easy for such a person to rationalize his own wishful thinking—together with hopeful comments of counsel—into a structure of

promises, coercion and trickery; to assume incompetency and disinterest or worse, upon the part of counsel. But mere general assertions of incompetency or disinterest do not constitute a prima facie showing required by the statute to support a petition for habeas corpus. [113] District attorneys and assigned counsel are officers of the court; licensed to practice, upon proof of character and fitness to perform professional duties. There is a presumption of proper performance of duty by each of them, which requires much more than the allegations of the present case to set the procedure of habeas corpus in motion. [114]

 The petition also alleges that appellant "was seized and deprived of his liberty by operatives of the Metropolitan Police Force on February 22, 1943, and was lodged in a cell and held in their custody, 'incommunicado'; * * * on several occasions he was brutally beaten by the said operatives of the Police Force, all for intent, purpose or effect of having your petitioner make a statement or confession of guilt. Your petitioner could no longer endure the physical pain and mental torture he was subjected to undergo by the said operatives, so he signed a statement, or confession. Petitioner was willing to admit to any crime that the said operatives wished him to admit." We do not palliate or excuse such conduct upon the part of police officials. If such conduct took place, it was grossly improper and illegal; sufficient to provide a basis for disciplinary action under the Code; [115] and sufficient to exclude a confession, so procured, if offered in evidence. [116] But this is not an action for such relief. No confession was received or even offered in evidence. Appellant was under no coercion when he appeared in court. There, under the protection of the judge, and with the advice of counsel, he could have stood trial and defied the police force. He did neither and it seems apparent that the allegations con-

---

[111] Two minute entries which appear in the record read as follows: "Mar. 29. Plea 'Not Guilty' withdrawn and plea of 'Guilty' entered, and referred to Probation Officer." "May 14. Sentenced—3 to 9 years to run concurrently with Criminal Nos. 69806 and 69807. McGuire, J."

[112] Monroe v. Huff, 79 U.S.App.D.C. 246, 145 F.2d 249.

[113] Diggs v. Welch, — U.S.App.D.C. —, 148 F.2d 667.

[114] Achtien v. Dowd, 7 Cir., 117 F.2d 989, 992; Diggs v. Welch, — U.S.App. D.C. —, 148 F.2d 667; McKay v. Rogers, 10 Cir., 82 F.2d 795, 798; Forbes v. United States, 5 Cir., 268 F. 273, 277; see Hodge v. Huff, 78 U.S.App.D.C. 329, 331–332, 140 F.2d 686, 688, 689.

[115] D.C.Code 1940, § 4—176.

[116] McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140.

tained in his petition constitute an afterthought, designed to secure a retrial of his case. Allowance of a writ upon the basis of this allegation would constitute a punitive measure against unrelated wrongdoing by the police. These are not the purposes of a writ of habeas corpus.[117] Power to grant such a writ, like the power of appellate courts in shaping rules of evidence, is not to be used as an indirect mode of disciplining misconduct.[118]

Appellant contends, also, that the decision should be reversed because of failure to appoint counsel to represent him in the present proceeding. In most of the alternative situations outlined earlier in this opinion there would be, not only no right, but no reason for such an assignment. Although appointment of counsel may be proper[119] and desirable in other situations, both for the protection of the petitioner and the assistance of the judge,[120] the court is not required to appoint an attorney for these purposes and no deprivation of constitutional right results from his failure to do so.[121] A habeas corpus proceeding is not a criminal proceeding[122] and consequently the Sixth Amendment has no application to it.

One question remains to be considered, namely, whether this Court properly disregarded the certificate of the trial judge, made in support of his refusal to authorize an appeal in forma pauperis. There is in the statute no word of limitation, which gives or suggests power in an appellate court to disregard the certificate.[123] Congress chose, thus, to make such a determination final. This was permissible legislative action. An appeal in forma pauperis is a privilege, not a right; no requirement of due process is involved.[124] If Congress had intended that appellate courts should exercise supervisory power in such circumstances it would have used appropriate language for that purpose as it did, for example, in the statutory provision for granting bail on appeal.[125] Unlike Section 466[126]—which requires a certificate of probable cause for an appeal from an adverse decision upon a petition for habeas corpus, where the detention complained of is by virtue of process issued out of a state court, and authorizes either the district court or a circuit judge to issue the certificate—Section 832[127] relates to *appeals in forma pauperis* and makes a sufficient certificate of the trial court final against the perfection of *such* an appeal. Consequently, under Section 466, the district court and the court of appeals act independently of each other and if the court of appeals fails—upon a proper request being made—to consider whether the case is an appropriate one for a certificate of probable cause under that Section, it is error.[128] But upon the question whether the petitioner shall be allowed to proceed on appeal in forma pauperis, under Section 832, if the district court has certified adversely, the court of appeals is bound by

---

[117] See Slaughter v. Wright, 4 Cir., 135 F.2d 613.

[118] United States v. Mitchell, 322 U.S. 65, 70, 71, 64 S.Ct. 896, 88 L.Ed. 1140.

[119] 28 U.S.C.A. § 835: "The court may request any attorney of the court to represent such poor person, if it deems the cause worthy of a trial, and may dismiss any such cause so brought if it be made to appear that the allegation of poverty is untrue, or if said court be satisfied that the alleged cause of action is frivolous or malicious."

[120] Hodge v. Huff, 78 U.S.App.D.C. 329, 332, 140 F.2d 686, 689.

[121] Hodge v. Huff, 78 U.S.App.D.C. 329, 332, 140 F.2d 686, 689; Brown v. Johnston, 9 Cir., 91 F.2d 370, 372, certiorari denied 302 U.S. 728, 58 S.Ct. 58, 82 L.Ed. 563.

[122] Ex parte Tom Tong, 108 U.S. 556, 559, 2 S.Ct. 871, 27 L.Ed. 826; Farnsworth v. Montana, 129 U.S. 104, 113, 9 S.Ct. 253, 32 L.Ed. 616; Cross v. Burke, 146 U.S. 82, 88, 13 S.Ct. 22, 36 L.Ed. 896; Fisher v. Baker, 203 U.S. 174, 181, 27 S.Ct. 135, 51 L.Ed. 142, 7 Ann.Cas. 1018; Kabadian v. Doak, 62 App.D.C. 114, 117, 65 F.2d 202, 205, certiorari denied, Kowal v. Perkins, 290 U.S. 661, 54 S.Ct. 76, 78 L.Ed. 572; Goldsmith v. Valentine, 36 App.D.C. 63, 66; Brown v. Johnston, 9 Cir., 91 F.2d 370, 372, certiorari denied, 302 U.S. 728, 58 S.Ct. 58, 82 L.Ed. 563.

[123] 28 U.S.C.A. § 832.

[124] United States ex rel. Dilling v. McDonnell, 7 Cir., 130 F.2d 1012; see Baltimore & Potomac R. R. v. Grant, 98 U.S. 398, 401, 25 L.Ed. 231.

[125] Rule 6, Rules-Criminal Procedure After Plea, etc., 18 U.S.C.A. following Section 688: "Bail shall not be allowed pending appeal unless it appears that the appeal involves a substantial question which should be determined by the appellate court."

[126] 28 U.S.C.A. § 466.

[127] 28 U.S.C.A. § 832.

[128] House v. Mayo, 65 S.Ct. 517.

878

that certificate unless upon a proper showing it determines that the adverse certificate of the district court was made without warrant or was itself not in good faith.[129]

■ In the Wells case [130] the Supreme Court said: "For purposes of this case, we shall assume, as petitioner contends, that the Act of 1910 does not foreclose all appellate review in forma pauperis when the trial court has certified its opinion that the appeal is not taken in good faith. But we think that where, as in this case, leave is necessary to perfect the appeal, the certification must be given effect at least to the extent of being accepted by appellate courts as controlling in the absence of some showing that the certificate is made without warrant or not in good faith." No suggestion of bad faith on the part of the District Court was made, in petitioner's behalf, on this appeal. If—as seems most probable—the Supreme Court meant, by its use of the words *without warrant* a certification made without authorization, sanction or justification under the statute,[131] then the limitation has no application here; the trial judge had jurisdiction of the petition and of petitioner; he had power to certify

that the appeal which petitioner had taken was taken in bad faith; thus to prevent the perfection, i. e., the completion of the appeal, just as effectively as if following the taking of an appeal—not in forma pauperis—an appellant failed to pay the necessary fee or to perform any other requirement of the statute. Even making the improbable assumption that the Supreme Court meant to suggest that the appellate court has power to review the record, independently of the trial judge's certification, and thus to permit perfection or completion of an appeal so taken, such power should be most circumspectly exercised. All the reasons which argue against appellate interference with verdicts and findings of trial courts are doubly persuasive here.[132] All the reasons which argue in favor of finality in litigation and of statutes of repose are equally persuasive. We conclude that our action in permitting appellant to proceed in forma pauperis was improvident and that the certificate of the trial judge should have been respected.[133]

For all these reasons the appeal must fail.

Appeal dismissed.

[129] Wells v. United States, 318 U.S. 257, 63 S.Ct. 582, 87 L.Ed. 746.

[130] Wells v. United States, 318 U.S. 257, 259, 63 S.Ct. 582, 584, 87 L.Ed. 746; see, also, Waterman v. McMillan, 77 U.S.App.D.C. 310, 135 F.2d 807; Spruill v. Temple Baptist Church, 78 U.S.App.D.C. 324, 141 F.2d 137; Boykin v. Huff, 73 App.D.C. 378, 121 F.2d 865, decided by this Court in 1941, two years prior to the decision in the Wells case, did not consider the effect of an adverse certificate by the district judge. Its language must, of course, be limited accordingly.

[131] 28 U.S.C.A. § 832; see Webster's New International Dictionary (2d ed. 1942): "Warrant * * * 2. Authorization; sanction of law or of a superior; command; also, a token of such."

[132] Cf. Commissioner of Internal Revenue v. The Scottish American Investment Company Limited, 323 U.S. 119, 65 S.Ct. 169.

[133] Cf. In re Wragg, 5 Cir., 95 F.2d 252, certiorari denied, 305 U.S. 596, 59 S.Ct. 80, 83 L.Ed. 377; Murrey v. United States, 8 Cir., 130 F.2d 20; Aninos v. Maguire, 6 Cir., 127 F.2d 817, 820.